DANIEL, ATTORNEY GENERAL, ET AL. *v.* FAMILY
SECURITY LIFE INSURANCE CO. ET AL.

No. 297.   Argued February 2, 1949.—Decided February 28, 1949.

*David W. Robinson* argued the cause for appellants. With him on the brief were *John M. Daniel,* Attorney General of South Carolina, *T. C. Callison, J. Monroe Fulmer,* Assistant Attorneys General, *Edgar A. Brown, Nathaniel A. Turner* and *R. Hoke Robinson.*

*Donald Russell* argued the cause for appellees.   With him on the brief were *C. Erskine Daniel* and *E. W. Johnson.*

Opinion of the Court by MR. JUSTICE MURPHY, announced by MR. JUSTICE RUTLEDGE.

A South Carolina statute provides that life insurance companies and their agents may not operate an under-

taking business, and undertakers may not serve as agents for life insurance companies. Criminal sanctions are provided. Act No. 787, S. C. Acts of 1948, p. 1947.[1] Respondents brought action before a three-judge District Court in the Eastern District of South Carolina, seeking an injunction forbidding the enforcement of the statute. 28 U. S. C. § 380, now 28 U. S. C. §§ 2281, 2284. The court, one judge dissenting, upheld respondents' contentions that the statute, as applied in this case, did not provide that due process of law and equal protection of the laws guaranteed by the Fourteenth Amendment to the Constitution of the United States. A permanent injunction issued, 79 F. Supp. 62, and the South Caro-

---

[1] "SECTION 1: Life insurance companies and their employees not own or operate undertaking business.—It shall be unlawful for any life insurance company, corporation, or association, except fraternal benefit societies licensed to do business in this State to own, manage, supervise, or operate or maintain a mortuary or undertaking establishment, or to permit its officers, agents or employees to own, operate or maintain any such funeral or undertaking business.

"SECTION 2: Life insurance company or sick or funeral benefit company not contract with undertaker conduct funeral of person insured by it.—It shall be unlawful for any life insurance company, sick or funeral benefit company, or any company, corporation or association engaged in a similar business to contract or agree with any funeral director, undertaker or mortuary to the effect that such funeral director, undertaker, or mortuary shall conduct the funeral of any person insured by such company, corporation or association.

"SECTION 3: Undertaker and his employees not act as agent for life insurance company.—It shall be unlawful for any funeral director, undertaker, or mortuary, or any agent, officer or employee thereof to be licensed as agent, solicitor or salesman for any life insurance company, corporation or association doing business in this State.

"SECTION 4: Penalties.—Any person violating any of the provisions of this Act shall be deemed guilty of a misdemeanor, and each violation thereof shall be a separate offense, and upon conviction shall be punished by fine not exceeding One Thousand ($1,000.00) Dollars or by imprisonment at hard labor for not exceeding six (6) months, or both such fine and imprisonment within the discretion of the courts. . . ."

lina Attorney General has appealed to this Court. 28 U. S. C. § 380, now 28 U. S. C. §§ 1253, 2281.

The respondent insurance company is incorporated and licensed to do business in South Carolina, and conforms with the comprehensive code of insurance regulations established by Act No. 232, S. C. Acts of 1947, p. 322. The other respondents are its officers and directors. It issues life insurance with cash benefits ranging from $125 to $750. The amount of outstanding policies had reached a total of $838,375 in May of 1948, compared to nothing in February of the same year. Most of the company's agents are undertakers. Parties to the insurance contract contemplate use of the policy's proceeds to pay funeral expenses. A "facility of payment" clause might justify payment of proceeds to an undertaker for the insured's funeral. At the time of the trial, respondent company was the only concern in South Carolina selling "funeral insurance" as an established practice.

For many years South Carolina has prohibited the payment of insurance proceeds in merchandise or services. Act No. 205, S: C. Acts of 1929, p. 234; S. C. Code of 1942, § 7984; Act No. 232, S. C. Acts of 1947, § 65, p. 350. Possibilities of fraud, misunderstanding in valuation, and the comparatively useless character of the merchandise delivered or services rendered make respondents readily concede the desirability of this ban. Other states have similar statutes.[2]

The South Carolina legislature might well have concluded that funeral insurance, although paid in cash, carries the same evils that are present in policies payable in merchandise or services: the beneficiary's tendency to deliver the policy's proceeds to the agent-undertaker for whatever funeral the money will buy, whether or not an

---

[2] See Fla. Stat. (1941), § 639.04; Me. Rev. Stat., c. 56, § 138 (1944); Ky. Rev. Stat., § 303.120 (1946); Ill. Rev. Stat., c. 73, § 956 (1947).

expensive ceremony is consistent with the needs of the survivors.[3]  Considerations which might have been influential include the likelihood of overreach on the part of insurance companies, and the possibilities of monopoly control detailed in affidavits introduced in the court below.

The South Carolina legislature is not alone in seeing evils in this kind of insurance, and in invoking its police powers to combat them.  See the similar provisions in N. Y. Insurance Law, § 165 (c); Fla. Stat. (1941), § 639.02; Ga. Code Ann. § 56–9920; Page's Ohio General Code, § 666 (1946) (see *Robbins* v. *Hennessey,* 86 Ohio St. 181, 99 N. E. 319); Md. Ann. Code, Art. 48A, § 110 (1939).  And see the summary of critical arguments in Business Week, October 20, 1945, pp. 48, 51.

Yet the court below held that the statute is "arbitrary and discriminative and designed to destroy, and will destroy, the plaintiff insurance company and its business . . . ."  "It seems obvious from the record that this legislation had its genesis in the desire of the existing insurance companies to eliminate the plaintiff company as a competitor. . . ."  79 F. Supp. at 70, 65.  The court found that the respondent's policies are actuarially sound; that funeral insurance is desirable; and that the other South Carolina insurance regulations are "ample" to correct any evils resulting from respondents' business.

---

[3] "You come to the place of business, the mortuary, to pay it. Month in and month out.  The inducement for a funeral director to align himself with this is the fact that it will freeze this business to him.  He doesn't have to, let me hasten to say.  You don't have to call that funeral director, but if he continuously beats a path to his door to pay his insurance, there is no question about it that if he has any decent employees, they are going to convince the man the thing to do is to come to them.  Now, is that a healthy situation?"  Proceedings of the Senate Banking and Insurance Committee, State of South Carolina, March 31, 1948, No. 1382, *In re* "THE MORTUARY BILL."  R. 85.

The Court concluded that the statute now before us is so unreasonable that it offends the Due Process Clause.

*First.* It is said that the "insurance lobby" obtained this statute from the South Carolina legislature. But a judiciary must judge by results, not by the varied factors which may have determined legislators' votes. We cannot undertake a search for motive in testing constitutionality. See *Hammer* v. *Dagenhart,* 247 U. S. 251, overruled in *United States* v. *Darby,* 312 U. S. 100. Compare *Bailey* v. *Drexel Furniture Co.,* 259 U. S. 20, and *United States* v. *Constantine,* 296 U. S. 287, with *Sunshine Anthracite Coal Co.* v. *Adkins,* 310 U. S. 381, 393. Compare *United States* v. *Butler,* 297 U. S. 1, with *Steward Machine Co.* v. *Davis,* 301 U. S. 548, 592, and *Cincinnati Soap Co.* v. *United States,* 301 U. S. 308.

*Second.* Despite evidence to the contrary, respondents see no evil to be corrected by this legislation. We are asked to agree with respondents and call the statute arbitrary and unreasonable.

Looking through the form of this plea to its essential basis, we cannot fail to recognize it as an argument for invalidity because this Court disagrees with the desirability of the legislation. We rehearse the obvious when we say that our function is thus misconceived. We are not equipped to decide desirability; and a court cannot eliminate measures which do not happen to suit its tastes if it seeks to maintain a democratic system. The forum for the correction of ill-considered legislation is a responsive legislature.

We cannot say that South Carolina is not entitled to call the funeral insurance business an evil. Nor can we say that the statute has no relation to the elimination of those evils. There our inquiry must stop.[4]

---

[4] Our deference to the legislative judgment is particularly pronounced in a field as traditionally well regulated as insurance. See

This rationale did not find expression in *Liggett Co.* v. *Baldridge,* 278 U. S. 105, on which respondents rely. According to the majority in *Liggett,* "a state cannot, 'under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.'" 278 U. S. at 113. But a pronounced shift of emphasis since the *Liggett* case has deprived the words "unreasonable" and "arbitrary" of the content for which respondents contend. See *Lincoln Federal Labor Union* v. *Northwestern Iron & Metal Co.,* 335 U. S. 525, where the cases are reviewed.

The *Liggett* case, however, was concerned with a statute far different from the one we are considering now. Pennsylvania required drug store owners to be licensed pharmacists. Because the statute was directed at owners, who might have no connection with the pharmaceutical branches of modern drug stores, a divided Court thought the measure unreasonable. The Pennsylvania statute was clearly less adapted to the recognized evil than the provision now before us. The *Liggett* case, on its facts, is not authority for the invalidation of the South Carolina Mortuary Act.

The South Carolina statute, on its face, does not contravene the provisions of the Fourteenth Amendment. Neither does it offend the Amendment as applied to these respondents.[5] We reverse the judgment below.

*Reversed.*

---

*Osborn* v. *Ozlin,* 310 U. S. 53, 65, 66; *La Tourette* v. *McMaster,* 248 U. S. 465, 467, 468; *Prudential Insurance Co.* v. *Benjamin,* 328 U. S. 408, 416, n. 13.

[5] That respondent company is the only concern now affected by the statute does not, of course, mean a denial of equal protection. The statute is drawn in general terms; the company's success might well induce others to enter the business. See the dissenting opinion below, 79 F. Supp. at 73, 74. And see *Mason* v. *Missouri,* 179 U. S. 328.