**SHIPMAN et al. v. DUPRE et al.**
Civ. A. No. 2362.

United States District Court
E. D. South Carolina, Charleston Division.
Heard Dec. 19, 1949.

Decided Jan. 23, 1950.

Judgment Vacated April 24, 1950.
See 70 S.Ct. 640.

484

the coast. The defendants are the members of the State Board of Fisheries and its Chief Inspector. They are citizens and residents of the State of South Carolina, and the said Board is created by Statutes of the State of South Carolina. Code of Laws of South Carolina, 1942, § 3304.

This action is brought in this Court which is alleged to have jurisdiction by reason of the contention that certain statutes of the State of South Carolina, hereinafter more fully referred to, are in violation of the Constitution of the United States and specifically in violation of the Fourteenth Amendment to the Constitution of the United States and also in violation of Article III, Section 2 of the Constitution which gives to the United States exclusive jurisdiction in Admiralty, and Article I, Section 8 which gives to the United States exclusive jurisdiction over Interstate Commerce.

Joseph Fromberg, Charleston, S. C., Aaron Kravitch, Savannah, Ga., Phyllis Kravitch, Savannah, Ga., for plaintiffs.

R. Hoke Robinson, Asst. Atty. Gen. of South Carolina, John M. Daniel, Attorney General of South Carolina, Henry T. Gaud, Charleston, S. C., for defendants.

Before PARKER, Circuit Judge, WARING, Chief Judge, and TIMMERMAN, District Judge.

WARING, Chief Judge.

This is a suit brought by a number of persons engaged in commercial fishing. Some of these are the owners and operators of fleets of shrimp and fish trawlers off the coasts of North Carolina, South Carolina, Georgia, and Florida who are citizens and taxpayers of the State of South Carolina and are there licensed to operate. Others of the plaintiffs are agents and employees, many of them being masters of trawlers and others being employees thereon, and they, likewise, are citizens of South Carolina. The boats engaged in fishing and trawling belonging to or employing the various plaintiffs operate in the open sea along the Atlantic coast ranging from a one-half mile to ten miles off

Plaintiffs pray for a declaratory judgment as authorized by Title 28 U.S.C.A. §§ 2201 and 2202, and for the convening of a Three-Judge Court and the granting of an interlocutory and a permanent injunction under Title 28 U.S.C.A. §§ 2281 and 2284.

Such a Three-Judge Court was convened by appropriate order and the case came on for a hearing at which time all matters involved were duly considered. Testimony was taken and all issues submitted for final adjudication.

The complaint sets forth in detail the business in which the plaintiffs are engaged and alleges that the defendants acting under the authority of certain state statutes are materially and seriously interfering with the rights of plaintiffs in the conduct of their business and are causing plaintiffs large losses by the seizure of their boats and cargoes and by bringing various actions against plaintiffs and their property and employees, and constantly harassing them in the conduct of their business as a result of which the plaintiffs have suffered, and are continuing to suffer, severe and continuous losses of large amounts of money well in excess of the jurisdictional amount of $3,000. The specific statutes of the State of South Carolina which are

claimed to be void as in conflict with the Constitution and laws of the United States are:

Section 3403 of the Code of Laws of South Carolina of 1932.[1] This Section provides for the forfeiture of vessels used, their equipment and cargoes in the tide waters of South Carolina in violation of the fisheries laws.

Section 3379 of the Code of Laws of South Carolina 1942, as amended by act of the General Assembly June 17, 1949, 46 Statutes at Large, pp. 609, 610. The specific portions of that Act claimed to be void are those wherein it is declared that in any proceedings against a trawler, the registered master or captain shall be presumed to have been aboard the boat and such presumption shall be prima facie evidence of the same and the further portion of the Act which provides for confiscation.[2]

Section 3310 of the Code of Laws of South Carolina 1942, which gives to the Board of Fisheries authority to adopt rules and regulations having the force and effect of law.[3]

Section 3408 of the Code of Laws of South Carolina 1942, as amended by act of the General Assembly April 21, 1948, 45 Statutes at Large, pp. 2058-9 wherein a closed season for the catching and dealing in shrimps is provided and all such catching, fishing, and dealing is prohibited in the closed season and boats and equipment shall be forfeited.[4]

1. Code of Laws of South Carolina 1932, § 3403.

"Forfeiture of Vessels, Etc.—Sale—Deposit of Proceeds.—Any vessel or craft, with her tackle, apparel and furniture, and any dredge, machinery, or other instrumentality used in the tide waters of this State for the taking or transporting of fish, shellfish, or terrapin, in violation of the coastal fisheries law, together with the fish, shellfish or terrapin so taken shall be forfeited to the State, and in proceeding upon a hearing before the board of fisheries, may be condemned by the board of fisheries and sold by the chief inspector in the manner and after advertisement as provided for sheriff's sales or property taken under execution and the proceeds of sale, after payment of the costs and expenses of such proceedings, shall be paid into the Treasury of the State."

2. Code of Laws of South Carolina 1942, § 3379, as amended by Act of General Assembly June 17, 1949, 46 Statutes at Large, pp. 609-10.

" * * * At the time of securing said license for said boat the owner thereof shall file with the said Board of Fisheries a sworn statement giving the name and address of the Master or Captain of said shrimp boat. If said license shrimp trawler is found violating any fisheries law of this State it shall be presumed in all criminal and civil proceedings that the registered Master or Captain were in fact upon said boat, and said presumption shall be prima facie evidence of the presence of the Master or Captain upon said boat and operating same at the time of the violation of the law charged.

"In addition to the punishment provided for in Section 3407, any boat trawling for shrimp in the waters of South Carolina, without first securing a license so to do, shall be confiscated, with its rigging and equipment, to the State, and shall be sold by the State at public sale to the highest bidder for cash before the Court House door of the County in which captured, after giving ten (10) days notice of said sale in a newspaper published in said County."

3. Code of Laws of South Carolina 1942, § 3310.

"Board to make rules, etc.—penalties for violation.—The board shall have authority to adopt and promulgate rules and regulations for the government of the force under their control and for the control of fisheries, not contrary to or inconsistent with the laws and policy of the State, having the force and effect of law and to provide penalties for violation thereof not to exceed forfeiture of license or privilege previously granted by said board."

4. Code of Laws of South Carolina 1942, § 3408, as amended by Act of General Assembly April 21, 1948, 45 Statutes at Large, p. 2060.

" * * * There shall be a closed season on shrimp or prawn, beginning on the 1st day of January and ending on the 30th day of May each calendar year. Any person, firm or corporation violating said closed season shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than $100.00 nor more than $300.00 or by imprisonment of not less than thirty days nor

Section 3328 of the Code of Laws of South Carolina 1942, which gives authority to inspectors to examine premises, vessels and other places used in the fishing industry and to arrest without warrant persons found actually violating the laws.[5]

Respondents have questioned the jurisdiction of the Court to hear this case claiming that it does not present a substantial Federal question. Title 28 U.S.C.A. § 1331 gives the District Courts jurisdiction of all civil actions where the matter in controversy exceeds the value of $3,000 exclusive of interest and costs and arising under the Constitutional laws or treaties of the United States. In this case, there are allegations that the amount involved is far in excess of $3,000. There are also distinct charges that certain acts of the General Assembly of South Carolina violate the Constitution and laws of the United States. The Court must rely upon the allegations of the complaint in determining whether or not the case should be heard. We think the allegations of the complaint sufficient to warrant this Court making inquiry into the merits of the cause as set forth in the complaint and the Court, therefore, refused motion to dismiss and proceeded to investigate and pass upon the merits of the controversy.

In addition to the statutes hereinabove referred to and set out in the notes attached, the State of South Carolina has passed a number of laws regulating the taking of fish and shrimp and other shellfish. The plaintiffs make no complaint of the regulations covering the inland waters of the State and do not claim that their rights have been violated or that they should be allowed to fish therein. Nor does the State claim the right to regulate this industry beyond the well recognized three-mile maritime limit; and the matters herein involved relate to fishing and trawling outside of the inland waters but within the three-mile limit of the shores of South Carolina. This Court and the Supreme Court had occasion to consider many matters relative to the right of the State of South Carolina to regulate fishing and shrimping industry. See Toomer v. Witsell, D.C., 73 F.Supp. 371; Id., 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460. That case recognized that the State may exercise its police power to protect and regulate fishing rights, but that discrimination between residents and non-residents violated Constitutional rights.

In the instant case, the plaintiffs are not non-residents and there is no claim of discrimination against them on such ground. Also, in this case, the plaintiffs make no complaint as to their being required to take out licenses under the laws of South Carolina since they allege that they have conformed with the law and have obtained their licenses. The main ground of contention is the right of the State to enforce the forfeitures and penalties which the Acts impose; and the plaintiffs' main argument is against those particular statutes which provide for the forfeiture of vessels, equipment and the fish and shrimp which they have taken in instances where the statutes have been violated.

The respondents also object to the Court taking jurisdiction and rendering a declaratory judgment alleging that the plaintiffs have failed to show that they have been harmed by the seizure or forfeiture of vessels for failure to take out a license or other violations of the Statutes. It has been shown, however, that one vessel was seized but later released and that cargoes have been seized and it was admitted in argument that the State would use the forfeiture Statutes if and when the occasion occurred. We think it therefore proper for this Court to pass upon the matters

---

more than ninety (90) days or both fine and imprisonment, in the discretion of the court. In addition to such punishment all boats, rigging, and equipment used in any violation of said closed season shall be seized and forfeited under the provisions of Section 3403, 1932 Code."

5. Code of Laws of South Carolina 1942 § 3328.

"Authority of inspectors.—It shall be lawful for the inspectors to enter any and all premises, vessels, boats, houses, sheds or warehouses used in fishing or any fishing industry in the tide waters or coastal section of this State and to arrest, without warrant, all persons found actually violating the penal laws, contained in the coastal fisheries law."

involved and consider the constitutionality of the Statutes.

■ Plaintiffs claim that some of the Statutes are unconstitutional because they invade the Admiralty jurisdiction given by the Constitution of the United States, Article III, Section 2, and the exclusive jurisdiction in Admiralty held by the District Courts of the United States under the Judiciary Act of 1789, Title 28 U.S.C. A. § 1333. In reply to this contention, it is necessary only to cite the case of C. J. Hendry Co. v. Moore, 318 U.S. 133, 63 S.Ct. 499, 87 L.Ed. 663, which distinctly holds that the State may provide for a forfeiture without impinging upon such Admiralty jurisdiction.

In addition to the Statutes cited, there are penalty statutes providing for prosecution and punishment on conviction of persons violating the law in regard to the taking of shrimps and shellfish. But no question is raised here as to these matters.

But the most important and serious question is whether the forfeiture statutes hereinbefore referred to are in violation of the Constitutional protections in that they fail to provide any appropriate court process and arbitrarily deprive the plaintiffs or others in like plight of their rights to be heard and have a judicial inquiry before their goods are taken and forfeited. There can be no question, since the decision in the Hendry case, that articles used in fishing in violation of state laws may be forfeited, provided, of course, there is due process and opportunity for appropriate court review. The dissenting opinion by Mr. Justice Black so heavily relied upon by the plaintiffs here points out with crystal clarity the implications of the decision, and while this dissent is an eloquent and able protest against the extreme rights given to state officials, nevertheless, it underlines with startling emphasis the meaning of the majority decision. And so it would seem that our inquiry, may, therefore, be limited to ascertaining whether the South Carolina Statutes give the right to decide the question of forfeiture to administrative boards without recourse to or review by any competent court. The Statutes providing the forfeitures do not set forth any procedure to be followed in forfeiture excepting that it declares that the board may pass upon such matters and give due notice if forfeiture is decided upon. But there is a statute in the Code of South Carolina, Code of Laws of South Carolina 1942, § 846, which is as follows: "Action for forfeiture of property to State.— Whenever, by the provisions of law, any property, real or personal, shall be forfeited to the State, or to any officer for its use, an action for the recovery of such property, alleging the ground of the forfeiture, may be brought by the proper officer in the circuit court." It is contended, on behalf of the petitioner, that this section was repealed because the fishing statutes, Sections 3379 and 3408; see notes, had the usual proviso that all acts or parts of acts which were inconsistent, were repealed. There is no inconsistency with Section 846 in these acts and the repealer clauses here are, of course, merely directed at prior acts affecting the regulation of fishing matters.

■ But under the South Carolina law, there are ample other remedies. If a boat owner or other party aggrieved is dissatisfied with the finding of the Fisheries Board and its decision to forfeit the vessel or fishing appliances, he may, in some instances, go to the Supreme Court in its original jurisdiction, Rawl v. McCown, 97 S.C. 1, 81 S.E. 958, or go into the Common Pleas Courts of the State by petition for certiorari to review the findings of the board and in due course, take the case by appeal to the Supreme Court of the State of South Carolina. See Feldman v. South Carolina Tax Commission, 203 S.C. 49, 26 S.E.2d 22. See also recent proceedings in the original jurisdiction of the South Carolina Supreme Court where application was made for writ of certiorari in the case of Pettiford v. South Carolina State Board of Education. By order filed October 13, 1949, the Court refused to take original jurisdiction of the matter "without prejudice to the petitioner to go into the Court of Common Pleas and seek the same relief as here sought." Later, the plaintiff did

apply to the Court of Common Pleas and that Court took jurisdiction and heard the case on the merits. See Pettiford v. South Carolina Board of Education, Common Pleas Court of Richland County, decree filed December 13, 1949.

 But in addition to the foregoing, there is ample remedy allowed under the State of South Carolina Statutes and decisions. The Statutes of South Carolina give appropriate remedy by way of replevin, or as the procedure is known in this state by Claim and Delivery. The Claim and Delivery statutes will be found in South Carolina Code of Laws 1942, § 552 et seq. These provide, where one is deprived of his property, he may bring an action to recover it. This method gives ample protection if and where property has been illegally seized and is so held by any parties and will include the State Board of Fisheries, its officers or other officials making illegal seizures. The propriety of using this remedy afforded by the State has been distinctly recognized and approved by the District Court of the United States for the Western District of South Carolina in the case of Durant v. Bennett, 54 F.2d 634, where a Three-Judge Court sitting like this one, held that a forfeiture statute, similar to the. ones here under discussion, was not unconstitutional because of lack of due process since the Claim and Delivery Statutes of the State afford ample opportunity for the owners of the property to contest the seizure and forfeiture. And while it is here argued that the articles therein forfeited were inherently evil, nevertheless, that did not affect the principle involved since the question is not whether a fishing boat should be forfeited, but whether owners of such a boat are deprived of a right of court review. And if one has the right to go into court and test out the legality of a seizure of a slot machine as in Durant v. Bennett, certainly he would have an equal right to test the legality of seizing a fishing boat by the same means and method that are distinctly open to him by reason of the Claim and Delivery Statutes.

 The testimony showed that certain of the cargoes of shrimp which the inspectors claimed had been caught illegally, that is to say, within the three-mile limit during the closed season, were confiscated and sold. One of these cargoes was reported to be impregnated with an oil, apparently kerosene, and being unfit for human use, was properly destroyed. What we have said in regard to the right to forfeit vessels and equipment applies, of course, with an equal weight to the shrimp taken in violation of law. Moreover, it is questionable whether the owners of the vessels had acquired any title to the shellfish if they were taken illegally. There was no denial that these shrimp were taken within the closed season and therefore, if the statutory provisions for a closed season are valid, the State had a right to confiscate these cargoes.

Plaintiffs also vigorously attack the statutory regulations for a closed season. A number of witnesses testified that they saw no reason whatsoever for a closed season and stated that adjoining states did not follow this method of conservation. They admit that it was reasonable to forbid commercial fishing within the inland bays and streams which are the actual spawning grounds, but stated that the shrimp were plentiful and that commercial fishermen should be allowed, without restriction as to season, to trawl and take shrimp within the three-mile fishing grounds. They frankly admit that the shrimp are not as plentiful far out and beyond the three-mile limit; and those witnesses who complained of the fact that the inspectors had prosecuted them for fishing in the closed season said that they had fished without particular knowledge of where the three-mile limit was and most of them said that they had not estimated and could not estimate the distance, but that they had put out their nets at the same place where other boats were fishing. There was considerable dispute in the testimony as to whether they had fished within the three-mile limit. On the other hand, the defendants' inspectors showed that they had been careful to. estimate the three-mile limit and they stated that they had never apprehended parties unless they were clearly within this limit. And they mentioned that the particular

plaintiffs who had complained of being prosecuted were found to be fishing within a bare two to three hundred yards off the shore, the boats being so close that the inspectors, with the naked eye, could read the lettering on the boats and could describe the garb of the members of the crew.

The plaintiffs also gave opinion evidence that there was no need of conservation by forbidding fishing during a part of the year. Yet, in somewhat contradictory language, state that this greatly hurts their business because they were forced to fish outside the three-mile limit during the closed season and the shrimping there was not nearly so plentiful. As to the best method of conservation of shrimp and whether a closed season is necessary or not is a matter of scientific research and consideration. The fishermen in this case are not in favor of a closed season. The members of the State Board of Fisheries are in favor of it and they have called our attention to considerable literature on the subject published in government and other publications concerning the shrimping industry. The State of Louisiana, which is the leading shrimp producing state of the Union, seems to have made a more extensive study into this matter than most other states, and it has a rather complete set of statutes included in which is a season closed during a portion of the year, and government publications recommend the adoption of similar conditions throughout the area where shrimp trawling is prevalent. And so it would seem that while there may be diversity of opinion, there is very substantial and respectable authority advocating a season closed to shrimping during a part of the year in the interests of preserving the newly born small shrimp and giving them an opportunity to grow and mature.

But it is not incumbent upon this Court to pass upon the wisdom of the acts of the Legislature in determining the matter of a closed season. It is a well recognized doctrine of law that the propriety and usefulness of an act of this character is one within the sound direction of the legislative body and a court will not interfere with such acts provided they are within the power of the Legislature and have some rule or basis of reason. Numerous authorities might be cited to sustain this statement, but we think it unnecessary to go beyond the case of Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 heretofore referred to and in which the Supreme Court of the United States in reviewing the statutory provisions for a closed season in South Carolina said, 334 U.S. at page 389, 68 S.Ct. at page 1159, "The validity of these regulations is not questioned." In the Toomer case, it was decided that the State of South Carolina had the right and power to exercise supervision over shrimp fishing in the three-mile limit. This regulation for a closed season has been in existence for many years and the creation of a closed season is a thoroughly recognized method of preserving any and all species of game and wild life. It would seem to us that the regulation is based upon common sense and reasonable grounds. However, as heretofore stated, we are not concerned with its wisdom and since it cannot be said that this is a mere arbitrary regulation, there is no reason for the Court upsetting the considered opinion of the legislative body. See Daniel v. Family Ins. Co., 336 U.S. 220, 69 S.Ct. 550.

"But there is reason for judicial restraint in matters of policy deeper than the value of experiment: it is founded on a recognition of the gulf of difference between sustaining and nullifying legislation. This difference is theoretical in that the function of legislating is for legislatures who have also taken oaths to support the Constitution, while the function of courts, when legislation is challenged, is merely to make sure that the legislature has exercised an allowable judgment, and not to exercise their own judgment, whether a policy is within or without 'the vague contours' of due process." Concurring opinion of Mr. Justice Frankfurter in A. F. of L. v. American Sash Co., 335 U.S. 538, 555, 69 S.Ct. 258, 266.

█ The complaint also attacks the provisions of the statutes allowing inspection and arrest without warrant on the

premises of the shrimpers. (Note 5.) This was not seriously pressed in argument and statutes giving similar rights for inspection of premises used for businesses under state supervision are so common and frequent that we do not deem it necessary to elaborate on or further discuss this point since there is no merit to it.

■■■ The complaint also attacks the provision of the Statutes providing that the registered master or captain of a fishing boat shall be presumed to be aboard the boat. (Note 2.) This contention also was not seriously pressed in argument and is a mere rule of procedure and a presumption which may be rebutted. Such provisions are frequent in regulatory statutes. It is also claimed that Section 3310 of the South Carolina Code, which gives the Board of Fisheries authority to adopt rules and regulations (Note 3), is unconstitutional. Provisions of that kind are so prevalent in all statutory law that we do not deem it even necessary to comment on it.

Full opportunity was given to the plaintiffs to bring out all phases and features of this case. In our opinion, they have failed to sustain their contentions that the specific statutes set forth or referred to in the complaint and hereinabove reviewed are violative of the Constitution or Laws of the United States nor have they shown that by the acts of the Board of Fisheries or its officers or employees, the plaintiffs have been deprived of their property or are in jeopardy of suffering such deprivation without their having full and complete opportunity for due process in appropriate courts having jurisdiction of any of the matters involved. We are, therefore, of the opinion that the prayers for declaratory judgment and issuance of an injunction should be denied and the complaint will be dismissed with costs allowed against plaintiffs. Appropriate findings of fact, conclusions of law and an order carrying into effect the foregoing views will be filed.

PARKER, Circuit Judge, and TIMMERMAN, District Judge, concur.