Warren C. APEL et al., Plaintiffs,

v.

Dennis J. MURPHY, Jr., Director of the Department of Natural Resources of the State of Rhode Island, et al., Defendants.

Civ. A. No. 75–0210.

United States District Court, D. Rhode Island.

March 10, 1976.

Gerald W. Harrington, Edwards & Angell, Providence, R.I., for plaintiffs.

George M. Vetter, Jr., Benjamin V. White, III, of Hinckley, Allen, Salisbury & Parsons, Providence, R.I., for movants.

Julius C. Michaelson, Atty. Gen., State of Rhode Island, J. Peter Doherty, Allen P. Rubine, Asst. Attys. Gen., Providence, R.I., for defendants.

## OPINION

DAY, District Judge.

Presently before the Court is a motion filed by six Providence Journal Company reporters who seek a protective order against the plaintiffs' taking their deposi-

tions and an order quashing certain subpoenas duces tecum.[1]

The instant motion is incidental to a civil action brought to enjoin officials of the State of Rhode Island from enforcing a statute authorizing the Director of the Department of Natural Resources to make certain regulations pertaining to commercial fishing and from enforcing certain regulations promulgated by said Director under color of such statute pertaining to fishing for menhaden. The plaintiffs allege that said regulations contravene State law and the Due Process, Equal Protection and Privileges and Immunities Clauses of the Fourteenth Amendment to the Constitution of the United States, as well as the Commerce Clause.

At issue is whether the information sought by depositions and subpoenas duces tecum is relevant to the subject matter of the instant action, and, if relevant, whether it is protected by some form of journalist's privilege.

Said reporters contend that the plaintiffs seek discovery of the subjective intentions and motives of those enacting and promoting the contested legislation, which information is irrelevant to the subject matter of the instant action. In addition, said reporters assert a journalist's privilege on the grounds that the need for the information sought does not outweigh the "chilling effect" which said discovery would have on the journalists' ability to gather news and the public's interest in the free flow of information.

The plaintiffs, on the other hand, claim that said reporters have no standing to raise the issue of irrelevancy in the manner they have raised it, that the testimony which plaintiffs propose to adduce is relevant, and that no privilege is applicable.

The defendants support said reporters' contention that the information sought is irrelevant to the subject matter of the ac-

---

1. Said subpoenas command said reporters to bring to the depositions all notes, memoranda, correspondence and records of any kind, used in the preparation of articles for the Providence Evening Bulletin or Providence Journal, relating to statements made by the named defendants, the Governor, other state officials, commercial fisherman and sport fishermen on the subject of menhaden fishing and the enactment of the contested laws.

tion. They have not taken a position on the issue of privilege.

### PRIVILEGE

Were this case to involve an inquiry into relevant matters necessitating the disclosure of confidential sources or confidential information, a serious First Amendment issue would exist. To contend, as plaintiffs seem to do, that *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), precludes the assertion of a qualified journalist's privilege, is to oversimplify the *Branzburg* opinion, to overlook the significant reservations registered in Justice Powell's concurring opinion, and to ignore the distinctions made by several Circuit Courts of Appeals in considering the question of privilege in the context of civil cases. *See, e. g., Cervantes v. Time, Inc.,* 464 F.2d 986 (8th Cir. 1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 939, 35 L.Ed.2d 257 (1973); *Baker v. F & F Investment,* 470 F.2d 778 (2d Cir. 1972), *cert. denied,* 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973); *Carey v. Hume,* 160 U.S.App.D.C. 365, 492 F.2d 631 (1974), *petition for cert. dismissed,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974).

Despite the fact that said subpoenas directed said reporters to bring to the scheduled deposition a broad range of documents, the plaintiffs have assured the Court both orally and by memorandum that they do not seek the disclosure of any confidential sources or of any confidential statements. Plaintiffs state that they wish only the simple authentication of certain published news articles and imply that they will not request *production* of all the documents listed in said subpoenas.

The reporters assert that the proposed discovery would necessarily touch on confidential information they have gathered.

Since I am of the opinion that the information sought is not relevant to the subject matter of this action, it is unnecessary to focus on whether or not confidentiality is involved. This approach is in harmony with the well settled preference of federal courts to avoid unnecessary constitutional decisions.

### RELEVANCY

The reporters move for a protective order against the taking of their depositions, pursuant to Rule 26(c), Federal Rules of Civil Procedure, which states, in pertinent part:

"Upon motion . . . the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . (1) that the discovery not be had . . ."

Rule 45(b) permits a court to quash a subpoenas duces tecum if it is unreasonable or oppressive. Plaintiffs, of course, may obtain discovery regarding only those matters which are not privileged and which are relevant to the subject matter involved in the pending action. Rule 26(b), Federal Rules of Civil Procedure.

The plaintiffs seek the reporters' testimony in order to support the allegations embodied in paragraph 11, Count III of the complaint. *See* plaintiffs' memorandum at 1 and 2; reporters' memorandum at 3. Said paragraph 11 states:

"Public Laws of 1975, Chapter 155, amending General Laws of Rhode Island, 1956, Section 20–7–1 was enacted by the General Assembly of the State of Rhode Island and signed by the Governor of said State for the purpose and with the intent of preventing, prohibiting and forbidding out of state boats from fishing for Menhaden in the territorial waters of the State of Rhode Island. It was understood by all concerned in the enactment of this legislation, and by the Director, that the scheme to deny non-residents the right to fish for Menhaden was to be accomplished by giving power to the Director to make rules and regulations, as provided in the statute, with the full understanding that he was to make regulations which would prevent out of state boats, and thereby out of state corporations and individuals, including plaintiffs,

·from fishing at all for Menhaden in Rhode Island territorial waters . . ."

■ Ordinarily, in ruling on a discovery motion, the Court will not determine whether a claim in the complaint, if proved, would have a bearing on the ultimate outcome of the action, it being sufficient that the matter to be explored is relevant to the issues made by the pleadings. *See Humphreys Exterminating Company v. Poulter,* 62 F.R.D. 392 (D.Md.1974).

■ The Court has discretion whether or not to order discovery, however, and discovery related to an insubstantial claim may be refused. *See* Moore's Federal Practice ¶ 26.56[1], at 26–125; *Spier v. Home Insurance Company,* 404 F.2d 896 (7th Cir. 1968); *United Air Lines v. United States,* 26 F.R.D. 213 (D.Del.1960). This is an especially reasonable approach in the instant case where the reporters have no power to move to strike said claim prior to discovery and where they have asserted that said discovery would be burdensome and would substantially interfere with their work and the public's interest in unhindered news gathering. Only with this flexible approach can the Court give meaning to Rules 26(c) and 45(b), Federal Rules of Civil Procedure, which call for the regulation of discovery which imposes undue burdens and subpoenas which are unreasonable.

The plaintiffs seek from the reporters information relating to statements made by the Governor, state administrators and local fishing interests concerning the subject of Menhaden fishing in general and the enactment of said statute and regulation in particular.

■ The "purpose" for the Menhaden Regulations, as stated expressly therein, is conservation. The plaintiffs allege that the actual and improper "purpose" is discrimination against out of state fishers, and that conservation is a "feigned purpose". The plaintiffs further contend that there is a distinction between their inquiry into said improper "purpose" and an impermissible inquiry into the motives of the administration in procuring passage of said legislation.

*See generally* A. Bickel, The Least Dangerous Branch, 208–221 (1962). Whether labeled motive or purpose, an inquiry of reporters into the public statements of lobbyists and state officials relative to their reasons for supporting said legislation has no place in the instant action.

In *Daniel v. Family Security Life Insurance Co.,* 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632 (1949), the Court upheld a South Carolina statute despite the allegation that the legislation was designed to eliminate competition in the funeral insurance business. The Court stated:

> "It is said that the 'insurance lobby' obtained this statute from the South Carolina legislature. But a judiciary must judge by results, not by varied factors which may have determined legislators' votes."

*Daniel v. Family Security Life Insurance Co.,* 336 U.S. at 224, 69 S.Ct. at 552, 93 L.Ed. at 636. *See Flemming v. Nestor,* 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435, 1448 (1960); *Palmer v. Thompson,* 403 U.S. 217, 224, 91 S.Ct. 1940, 1944–45, 29 L.Ed.2d 438, 444 (1971).

This Court is not confronted with a situation where it must rely on its own or counsel's imaginativeness in seeking out a basis for said legislation. The regulations explicitly state that they are conservation measures. The Court need not ascertain whether conservation or some other "purpose" offered in defense of the legislation was the primary purpose.

> "The search for legislative purpose is often elusive enough, *Palmer v. Thompson,* 403 U.S. 217 [91 S.Ct. 1940, 29 L.Ed.2d 438] (1971), without a requirement that primacy be ascertained . . . The Equal Protection Clause does not countenance such speculative probing into the purposes of a coordinate branch. We have supplied no imaginary basis or purpose for this statutory scheme, but we likewise refuse to discard a clear and legitimate purpose because the court below perceived another to be primary."

*McGinnis v. Royster,* 410 U.S. 263, 276, 93 S.Ct. 1055, 1063, 35 L.Ed.2d 282, 292 (1973).

The Court may have to determine the actual effects of the laws and whether conservation is a rational basis for said laws, *Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955), and whether the burden on interstate commerce is excessive in relation to the putative local benefits, *Pike v. Bruce Church,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). It serves no purpose, however, for the plaintiffs to prove that officials and legislators also had in mind an illegitimate reason for desiring the enactment of said laws.

The Supreme Court articulated the permissible extent of Judicial inquiry into legislative purpose and motive in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). In *O'Brien,* a draft card burner challenged the application to him of a federal law forbidding the knowing destruction or mutilation of a draft card. One of the defendant's claims was that said law was unconstitutional because Congress, as indicated in the official legislative record, enacted it "to suppress freedom of speech".

In upholding said law, the Court stated: "We reject this argument because under settled principles the purpose of Congress, as O'Brien uses that term, is not a basis for declaring this legislation unconstitutional."

"We decline to void essentially on the ground that it is unwise [to void] legislation which Congress had the undoubted power to enact and which could be reenacted in its exact form if the same or another legislator made a 'wiser' speech about it."

"O'Brien's position, and to some extent that of the court below, rests upon a misunderstanding of *Grosjean v. American Press Co.,* 297 U.S. 233 [56 S.Ct. 444, 80 L.Ed. 660] (1936), and *Gomillion v. Lightfoot,* 364 U.S. 339 [81 S.Ct. 125, 5 L.Ed.2d 110] (1960) . . . In these cases, the purpose of the legislation was irrelevant, because the inevitable effect— the 'necessary scope and operation,' *McCray v. United States,* 195 U.S. 27, 59

[24 S.Ct. 769, 777, 49 L.Ed. 78] (1904)— abridged the constitutional rights."

*O'Brien,* 391 U.S. 367, 384, 88 S.Ct. 1673, 1683, 20 L.Ed.2d 672, 684 (1968).

Even the lower court which had struck down said criminal statute remarked:

"We do not rely in this connection on the fact that the legislative history suggests an improper purpose, see infra, but merely note the absence of any proper one."

*O'Brien v. United States,* 376 F.2d 538 (1st Cir. 1967), *rev'd,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *See McCray v. United States,* 195 U.S. 27, 56, 24 S.Ct. 769, 776–77, 49 L.Ed. 78, 95–96 (1904).

It does not appear that the information sought from said reporters would be of assistance to the legislative construction of R.I.Gen.Laws § 20–7–1 *et seq.* At any rate, the current interpretation by the Governor or administrative officials of language originating in a law enacted in 1953 is simply not what is encompassed by the notion of legislative construction. *See United States v. O'Brien,* 371 U.S. 367, 383, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672, 683–84 (1968).

Accordingly, it is this Court's conclusion that the plaintiffs have not made a sufficient showing of relevancy to warrant their proceeding to discovery on the matters herein involving said reporters.

The motion for a protective order and to quash subpoenas is hereby granted. Counsel for the reporters will prepare and submit for entry an order in conformity with this opinion.

All pretrial briefs to be filed in this action shall be submitted on or before March 29, 1976. The matter will be heard as soon thereafter as is convenient to the three judges assigned to consider this matter.