**CUMBERLAND FARMS, INC., Plaintiff,**

v.

**Brian MAHANY, and Samuel
D. Shapiro Defendants.**

**Civil No. 95–277–P–C.**

United States District Court,
D. Maine.

Oct. 24, 1996.

---

Joel C. Martin, James B. Haddow, Petruccelli & Martin, Portland, ME, for Plaintiff.

Janet McClintock, Assistant Attorney General, Augusta, ME, for Defendant.

*MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, Chief Judge.

Plaintiff Cumberland Farms, Inc. has brought an action against Defendants Brian Mahany, Maine State Tax Assessor, and Samuel D. Shapiro, Maine State Treasurer, alleging that the Milk Handling Tax Law, 36 M.R.S.A. §§ 4771–4773 ("1995 Act"), violates the negative Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3. Now before this Court are Plaintiff's and Defendants' cross-motions for summary judgment (Docket Nos. 13 and 16). For the reasons stated below, Defendants' Motion for Summary Judgment will be granted, and Plaintiff's Motion for Summary Judgment will, accordingly, be denied.

## I. SUMMARY JUDGMENT STANDARD

The Court of Appeals for the First Circuit has recently explained once again the workings and purposes of the summary judgment procedure:

Summary judgment has a special niche in civil litigation. Its "role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). The device allows courts and litigants to avoid full-blown trials in unwinnable cases, thus conserving the parties' time and money, and permitting courts to husband scarce judicial resources.

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c)....

Once a properly documented motion has engaged the gears of Rule 56, the party to whom the motion is directed can shut down the machinery only by showing that a trial-worthy issue exists. *See National Amusements [v. Town of Dedham]*, 43 F.3d [731,] 735 [ (1st Cir.1995) ]. As to issues on which the summary judgment target bears the ultimate burden of proof, she cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Garside [v. Osco Drug, Inc.]*, 895 F.2d [46,] 48 [ (1st Cir. 1990) ]. Not every factual dispute is sufficient to thwart summary judgment; the contested fact must be "material" and the dispute over it must be "genuine." In this regard, "material" means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. *See [United States v.] One Parcel [of Real Property with Buildings]*, 960 F.2d [200,] 204 [ (1st Cir.1992) ]. By like token, "genuine" means that "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party...." *Id.*

When all is said and done, the trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor," *Griggs–Ryan [v. Smith]*, 904 F.2d [112,] 115 [ (1st Cir.1990) ], but paying no heed to "conclusory allegations, improbable inferences, [or] unsupported speculation," *Medina–Munoz [v. R.J. Reynolds Tobacco Co.]*, 896 F.2d [5,] 8 [ (1st Cir.1990) ]. If no genuine issue of material fact emerges, then the motion for summary judgment may be granted.

... [T]he summary judgment standard requires the trial court to make an essentially legal determination rather than to engage in differential factfinding....

*McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 314–15 (1st Cir.1995).

## II. FACTS

Plaintiff Cumberland Farms, Inc. is a Delaware corporation with headquarters in Canton, Massachusetts. Verified Complaint (Docket No. 1) at 1. A processor and distrib-

utor of milk, Plaintiff owns and operates convenience stores throughout New England, including approximately twenty-five retail stores in the State of Maine. *Id.* ¶¶ 5, 6. Defendant Mahany is the Maine State Tax Assessor, responsible for assessment and collection of the milk handling tax imposed under 36 M.R.S.A. §§ 4771–4773. Defendant Shapiro is the Maine State Treasurer, responsible for depositing all proceeds from the milk handling tax into the General Fund.

Under the Agricultural Marketing Agreement Act, 7 U.S.C. §§ 601 *et seq.*, the United States Secretary of Agriculture enforces a "milk marketing order" for most of New England, known as the "New England Federal Milk Marketing Order # 1" ("Federal Order # 1"). Verified Complaint ¶ 11. Federal Order # 1 regulates prices for milk to be paid to dairy farmers by dealers who sell milk in the region covered by the federal order. *Id.* The State of Maine is not included in Federal Order # 1. 7 C.F.R. § 1001.2. The Maine Milk Commission establishes and regulates minimum prices for all Class I (beverage) milk sold for consumption in Maine. 7 M.R.S.A. §§ 2951 *et seq.*

In 1991, the Maine Legislature enacted the Maine Dairy Farm Stabilization Act ("1991 Act"). 36 M.R.S.A. §§ 4541–4546. The 1991 Act imposed a tax upon all sales of packaged fluid milk in Maine, regardless of the source. 36 M.R.S.A. §§ 4542, 4543(1). In addition, the 1991 Act provided for a rebate to Maine dairy farmers. 36 M.R.S.A. § 4544. In June 1994, the U.S. Supreme Court invalidated a Massachusetts pricing order which, like the 1991 Act, both imposed a tax on all milk sold to Massachusetts retailers and granted a subsidy to Massachusetts dairy farmers. *West Lynn Creamery, Inc. v. Healy*, 512 U.S. 186, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994). On August 24, 1994, in *Cumberland Farms, Inc. v. LaFaver*, 33 F.3d 1 (1st Cir. 1994), the United States Court of Appeals for the First Circuit struck down the 1991 Act, holding that the reasoning of the district court, in upholding the Act prior to the *West Lynn Creamery* decision, was no longer tenable. As a result, the State ceased collection of the milk handling tax and repealed the

1991 Act. P.L.1995, ch. 2, Emergency Preamble and § 4.

In January 1995, the Maine Legislature enacted "An Act to Continue the Fee on the Handling of Milk," ("1995 Act"). 36 M.R.S.A. §§ 4771–4773. The 1995 Act assesses a tax on the handling of all milk sold for consumption in Maine, regardless of the source. 36 M.R.S.A. §§ 4771, 4772. Revenues generated by the tax are deposited into the State's General Fund. § 4771(8). The legislative purpose, as stated in the Emergency Preamble to the 1995 Act, was to reinstate the collection of revenue "necessary to the State's ability to address [economic] difficulties and [significant fiscal] problems. . . ." P.L.1995, ch. 2, Emergency Preamble. In February 1995, the Maine Legislature enacted a bill appropriating $1,500,000 to the Maine Milk Commission from the General Fund, to be distributed by the Maine Milk Pool to Maine dairy farmers over the four-month period from March until June 1995. P.L.1995, ch. 5, § A–1. In June 1995, the Maine Legislature enacted another bill appropriating $4,050,000 in the same manner. P.L.1995, ch. 368, § B–1.

## III. DISCUSSION

The question before this Court is whether the 1995 Act and the two subsequent subsidies to Maine dairy farmers violate the negative Commerce Clause of the United States Constitution, Article I, Section 8, Clause 3. A threshold issue is whether the constitutionality of the 1995 Act and the two appropriations hinges on their alleged relationship to each other, or whether the statutes stand alone for the purposes of Commerce Clause scrutiny.

### A. *Relevance of the Legislative and Political Context*

Plaintiff contends that the 1995 Act must be read in concert with the two subsequent bills appropriating a total of $5.55 million from the General Fund to Maine dairy farmers. The tax imposed by the 1995 Act, when viewed in light of the subsidies enacted shortly thereafter, Plaintiff argues, must be construed as an unconstitutional "scheme," analogous to the tax-and-subsidy scheme in-

validated by the United States Supreme Court in *West Lynn Creamery, Inc. v. Healy,* 512 U.S. 186, 114 S.Ct. 2205, 129 L.Ed.2d 157 (1994). Defendants maintain that the 1995 Act is legally separate from any later appropriations of General Fund monies, and should be scrutinized individually. The Court agrees, and, for the reasons outlined below, declines to construe the statutes together as a scheme.

Plaintiff alleges that the Maine Legislature responded to the invalidation of the 1991 Act by merely "separating the 'tax' and 'appropriation' functions of the duty-and-rebate scheme," and "establish[ing] a mechanism for 'laundering' through the General Fund the proceeds of its tariff-like impost." Plaintiff's Motion for Summary Judgment at 17–18. Plaintiff would have the Court look beyond the 1995 Act itself to infer from the political and legislative context that, in passing the 1995 Act, the Maine Legislature acted with an improper purpose. The Court declines to draw such an inference.

It is not the business of courts to inquire into the hidden motives of the legislature. It is a well-established principle of constitutional law that "a judiciary must judge by results, not by the varied factors which may have determined legislators' votes." *Daniel v. Family Sec. Life Ins. Co.,* 336 U.S. 220, 69 S.Ct. 550, 93 L.Ed. 632 (1949); *see also Mass. Fin. Services, Inc. v. Sec. Investor Protection Corp.,* 545 F.2d 754, 756 (1st Cir. 1976), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977) (" 'It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the law making body which passed it, the sole function of the courts is to enforce it according to its terms.' " (*quoting Caminetti v. U.S.,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917))).

The implications of the plain meaning rule in this case are troubling, as the rule, in effect, requires the Court to blindfold itself to circumstances which clearly evince an attempt by the Legislature to flout the Constitution. The record here, at the very least, raises a strong suspicion that the Maine Legislature sought to do indirectly what the Supreme Court, in *West Lynn Creamery* clearly prohibited the Legislature from doing directly. Specifically, it appears that the Legislature intended to circumvent the Court's decision in *West Lynn Creamery* by simply pulling apart the two components of the 1991 Act, and reenacting them individually.

Nevertheless, there are important constitutional principles which militate against a court's decision to infer, from circumstantial evidence, that the legislature has acted with an improper purpose. First, there is a presumption that a legislature "acted with integrity and with an honest purpose to keep within constitutional limits." Sutherland, *Statutory Construction,* § 45.15. Moreover, it is a fundamental rule of statutory construction that where the purpose of a law is clear on the face of the statute, a court must not inquire into the individual legislators' motives for enacting the law. *See id.,* § 48.17 ("References to the motives of members of the legislature in enacting a law are uniformly disregarded for interpretive purposes except as expressed in the statute itself.").

The *West Lynn Creamery* decision, in any event, is not directly on point here, since the Supreme Court did not address the constitutionality of a "non-integrated" statutory scheme such as the one Plaintiff posits here. In that case, Massachusetts had intentionally linked together a tax on milk sales and a rebate to dairy farmers in an integrated statutory scheme. The Respondent there argued that the Massachusetts pricing order should be deemed constitutional if its two components would be constitutional standing alone. In rejecting that argument, the Court stated clearly that it was the direct combination of the two components within a single statute to which the Court objected:

> *By conjoining* a tax and a subsidy, Massachusetts has created a program more dangerous to interstate commerce than either part alone. Nondiscriminatory measures, like the evenhanded tax at issue here, are generally upheld, in spite of any adverse effects on interstate commerce.... However, when a nondiscriminatory tax is *cou-*

*pled with* a subsidy to one of the groups hurt by the tax, a state's political processes can no longer be relied upon to prevent legislative abuse, because one of the in-state interests which would otherwise lobby against the tax has been mollified by the subsidy.

*West Lynn Creamery*, 512 U.S. 186, ———, 114 S.Ct. 2205, 2208, 129 L.Ed.2d 157, 171 (emphasis added).[1]

Moreover, the Court's disapproval in *West Lynn Creamery* was largely derived from the fact that the pricing order was "funded principally from taxes on the sale of milk produced in other States," and that "[b]y so funding the subsidy, respondent not only assists local farmers, but burdens interstate commerce." *Id.* at ———, 114 S.Ct. at 2214, 129 L.Ed.2d at 170. Here, a direct link between the tax revenue paid by Cumberland Farms and the subsequent appropriations to Maine dairy farmers from the State's General Fund is lacking. Indeed, assuming that the tax imposed by the 1995 Act is facially nondiscriminatory,[2] Justice Scalia's concurrence in *West Lynn Creamery* contemplates the factual scenario that is before this Court with approval: "I would ... allow a State to subsidize its domestic industry so long as it does so from nondiscriminatory taxes that go into the State's general revenue fund." *Id.* at ———, 114 S.Ct. at 2221, 129 L.Ed.2d at 178.

Having declined to infer an improper purpose on the part of the Legislature, the Court concludes that the constitutionality of the 1995 Act and the two later appropriations does not hinge on the relationship between the three statutes.[3] The legal issue in this case is, therefore, limited to the constitutionality of the 1995 Act and the subsequent appropriations, respectively, under the negative Commerce Clause.

### B. The 1995 Act

 Plaintiff argues that, even standing alone, the 1995 Act is unconstitutional because the duty it imposes violates the Commerce Clause. The Act, according to Plaintiff, represents an attempt by the Maine Legislature to protect the Maine milk industry from competition by out-of-state competitors. Defendants contend that the 1995 Act assesses an evenhanded tax upon milk sold to consumers in the State of Maine. To the extent that the tax imposes a burden upon interstate commerce, Defendants assert, the burden is merely incidental, and is outweighed by the local benefit of increased revenue. The Court finds that the 1995 Act must be upheld on the grounds that it is facially neutral and it neither discriminates in purpose nor effect against out-of-state dealers.

 The negative Commerce Clause restricts the power of the Maine Legislature to enact laws that discriminate against interstate commerce. In order to determine whether the 1995 Act will survive a constitutional challenge under the negative Commerce Clause, the Court must first discern whether the statute is discriminatory on its face. "[S]tate statutes that clearly discriminate against interstate commerce are routinely struck down ... unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 274, 108 S.Ct. 1803, 1807–08, 100 L.Ed.2d 302, 308 (1988). The language of the 1995 Act indicates that the statute is not

---

**1.** Plaintiff asserts that, in this case, the Maine dairy farmers supported the 1995 Act and were "mollified" by the notion that a subsidy would inevitably follow shortly thereafter. It is not necessary to inquire into the factual basis for Plaintiff's assertion, as it suffices here to note that the Court agrees with Defendants' reasoning: "An unconstitutional purpose cannot be inferred from the political hopes of a few legislators." Memorandum in Support of Defendants' Motion for Summary Judgment at 12. Even if certain legislators indeed hoped to enact appropriations in the wake of the 1995 Act, the legislative record reflects the fact that neither the legis-

lators nor the farmers could guarantee that the revenues generated by the 1995 Act would be returned to the farmers in the form of a subsidy.

**2.** The nondiscriminatory nature of the tax is addressed in section B., *infra*.

**3.** Having decided that the Legislature has not transgressed in this case, the Court does not speculate as to the limiting principle that would enable courts to evaluate the constitutional validity of "non-integrated" statutory schemes.

facially discriminatory. The Act assesses an evenhanded tax upon the handling in Maine of packaged milk for sale in Maine and makes no attempt to distinguish between Maine handlers and out-of-state handlers.[4]

■ In *West Lynn Creamery,* the Supreme Court implied that the tax portion of the Massachusetts scheme, standing alone, would most likely have withstood Commerce Clause scrutiny: "nondiscriminatory taxes, like the evenhanded tax at issue here, are generally upheld." *West Lynn Creamery, Inc. v. Healy,* 512 U.S. at ——, 114 S.Ct. at 2215, 129 L.Ed.2d at 171. Yet a facially neutral statute may violate the Commerce Clause if it has been enacted with a discriminatory purpose. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ For the reasons outlined in Section A., *supra,* the Court declines to reach beyond the stated legislative purpose of this Act to infer a discriminatory purpose from the political climate in which the 1995 Act was passed. Instead, the Court relies upon the Preamble to the Act, which states a legitimate, non-discriminatory purpose: to reinstate revenues formerly provided to the State that are "necessary for the preservation of the public peace, health and safety," in order to address the "economic difficulties and significant fiscal problems" of both the State and its citizens. P.L.1995, ch. 2, Emergency Preamble.

■ The inquiry narrows then, to the question of whether the 1995 Act has a discriminatory or burdensome effect on out-of-state competitors that is not justified by the local benefit. In gauging the Act's effect, the Court must look simply to the tax itself. Without linking the milk handling tax to the dairy subsidies, it cannot be said that the burden consists of an ultimate tax "exemption" for in-state milk dealers. Plaintiff argues, however, that the tax has a discriminatory effect because it operates as a disincentive for Maine dealers to purchase out-of-state milk. The Court agrees with Defendants that Plaintiff has failed to demonstrate that the milk handling tax has such an effect. Furthermore, as Defendants point out, Plaintiff's quarrel appears to be with the overall regulatory structure of milk pricing and the State of Maine's milk pooling laws, rather than with this specific tax.

The Supreme Court set forth a balancing test for weighing the constitutionality of the effects of a state statute in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970). "Where the statute regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed is clearly excessive in relation to the putative local benefits." *Id.* at 142, 90 S.Ct. at 847, 25 L.Ed.2d at 178. To the extent that the milk handling tax represents a burden on interstate milk sales, this Court finds that the 1995 Act itself does not represent an effort by the Maine Legislature to require out-of-state dealers to "surrender whatever competitive advantages they may possess in order to do business with the State." *Brown–Forman Distillers Corp. v. N.Y. State Liquor Auth.,* 476 U.S. 573, 580, 106 S.Ct. 2080, 2085, 90 L.Ed.2d 552 (1986). Furthermore, any incidental burden of the tax is outweighed by the State's legitimate interest in raising general revenue through its taxation powers. As the Supreme Court made clear in *McGoldrick v. Berwind–White Coal Mining Co.,* 309 U.S. 33, 46, 60 S.Ct. 388, 391, 84 L.Ed. 565 (1940), "Not all state taxation is to be condemned because, in some manner, it has an effect upon commerce between the states. . . . Non-discriminatory taxation of the instrumentalities of interstate commerce is not prohibited."

The Court finds that the Act is neither discriminatory in purpose, nor effect, and that its local benefits outweigh the burdens it

---

**4.** *See* 36 M.R.S.A. § 4771(6) (" 'Retail handler,' means any person who handles packaged milk in this State that is next sold in this State subject to the minimum retail price . . ."), § 4771(8) (" 'wholesale handler' means any person who handles packaged milk in this State that is next sold in this State subject to the minimum wholesale prices paid to dealers . . .") and § 4771(5) (" 'person' means any individual, partnership, firm, corporation, association or other unit and the State and all political subdivisions or agencies of the State").

imposes. The 1995 Act is therefore valid under the negative Commerce Clause.

### C. The Subsidies

█ In *West Lynn Creamery*, the Supreme Court did not directly address the issue of whether subsidies to in-state businesses are, in themselves, constitutional: "We have never squarely confronted the constitutionality of subsidies, and we need not do so now. We have, however, noted that '[d]irect subsidization of domestic industry does not ordinarily run afoul' of the negative Commerce Clause.'" *West Lynn Creamery v. Healy*, 512 U.S. at ——, n. 15, 114 S.Ct. at 2214, n. 15, 129 L.Ed.2d at 170, n. 15 (*quoting Limbach*, 486 U.S. at 278, 108 S.Ct. at 1810). The Supreme Court did, however, note that "[a] pure subsidy funded out of general revenue ordinarily imposes no burden on interstate commerce but merely assists local businesses." *Id.* at ——, 114 S.Ct. at 2214, 129 L.Ed.2d at 170. In this case, the two subsidies at issue are appropriations of monies from the State's General Fund for distribution to the State's dairy farmers. The Court finds that insofar as these two enactments are funded from general revenue, they are facially valid under the negative Commerce Clause.

### IV. CONCLUSION

Accordingly, it is *ORDERED* that Defendants' Motion for Summary Judgment be, and it is hereby, *GRANTED*. It is therefore *ORDERED* that Plaintiff's Motion for Summary Judgment be, and it is hereby, *DENIED*. It is *FURTHER ORDERED* that judgment be *ENTERED* forthwith, on Plaintiff's Complaint in favor of Defendants and against Plaintiff.