

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-1994

# United States v. Breyer

Precedential or Non-Precedential:

Docket 94-1301

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"United States v. Breyer" (1994). *1994 Decisions.* Paper 184.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/184

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 94-1301

————————

UNITED STATES OF AMERICA

vs.

JOHANN BREYER, aka JOHN BREYER,
JOHANN PAUL BREUER, JAN PAVEL BREUER,
JAN PAVEL BREYER, HANS BREYER

Johann Breyer,
                    Appellant

————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ No. 92-cv-02319)

————————

Argued
September 13, 1994
Before:  SLOVITER, Chief Judge,
MANSMANN and ALARCON,* Circuit Judges.
(Filed November 14, 1994)

————————

Joseph V. Restifo, Esquire (Argued)
Suite 2525
12 South 12th Street
PSFS Building
Philadelphia, PA  19107

          Counsel for Appellant

Eli M. Rosenbaum, Acting Director
Ronnie L. Edelman, Deputy Director
Denise Noonan Slavin, Sr. Trial Attorney
Michael D. Bergman, Trial Attorney (Argued)
Joseph J. Malcolm, Trial Attorney
Office of Special Investigations
Criminal Division
U.S. Department of Justice
1001 G Street, N.W., Suite 1000
Washington, DC  20530

Counsel for Appellee

*        Honorable Arthur L. Alarcon of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

_____

OPINION OF THE COURT

_____

MANSMANN, Circuit Judge.

The United States commenced an action under the Immigration and Nationality Act of 1952, as amended, U.S.C. §§ 1101 et seq., against Johann Breyer, seeking his denaturalization based on his service as an armed guard in Nazi concentration camps during World War II. Breyer's naturalization was premised on his 1952 entry into the United States as a displaced person under the Displaced Persons Act of 1948, Pub. L. No. 80-774, 62 Stat. 1009, amended by Pub. L. No. 81-555, 64 Stat. 219 (1950). Although Breyer essentially conceded that he was ineligible for displaced persons status as a result of his wartime activities, he challenged the government's right to denaturalize him, asserting that in retrospect, he should be deemed to have entered this country in 1952 lawfully as a United States citizen, having derived citizenship through his mother. The district court granted summary judgment in the government's favor, which served to denaturalize Breyer. Nonetheless, the court determined that the derivative citizenship statute in effect at the time of Breyer's birth, which awarded citizenship only to persons born to United States citizen fathers, was unconstitutional, but abstained from declaring Breyer a United States citizen because of a pending administrative proceeding he had initiated for this

purpose.  The issues we address are whether Breyer was properly denaturalized and whether the district court should have reached Breyer's derivative citizenship claim.

## I.

The material facts surrounding Breyer's entry into the United States and subsequent naturalization are not in dispute. Breyer was born on May 30, 1925, in Neuwalddorf, now known as Nova Lesna in the Republic of Slovakia.  As a young man, he joined the Waffen SS, a Nazi paramilitary group, and ultimately became a member of the SS Totenkopfsturmbanne (Death's Head) Battalion.  The SS Totenkopfsturmbanne was responsible for guarding Nazi concentration camps, where people were forcibly confined in inhumane conditions, subjected to unspeakable atrocities and executed because of their race, religion, national origin or political beliefs.

Breyer was initially assigned to the Buchenwald concentration camp where he served in the SS Totenkopf guard unit from February, 1943 to May, 1944.  At Buchenwald, Breyer was trained to use a rifle and guard prisoners.  In uniform, Breyer accompanied prisoners to and from work sites, and stood guard with a loaded rifle at the perimeter of the camp, under orders to shoot any prisoner trying to escape who failed to heed a warning to stop.  In May, 1944, Breyer was transferred to Auschwitz, a death camp complex established in Nazi-occupied Poland.  Again uniformed as an SS Totenkopf guard and armed with a rifle, Breyer patrolled the camp's perimeters and escorted prisoners to and

from work.  In August, 1944, Breyer took a paid leave, never to return to guard duty.  While Breyer denied that he personally engaged in any abuse of prisoners, he was aware that prisoners were tortured and killed at Buchenwald and Auschwitz.

In May, 1951, Breyer applied to the United States Displaced Persons Commission to be qualified as a displaced person under the Displaced Persons Act for purposes of obtaining a visa to immigrate to the United States.  His application was initially rejected because he had served in the Waffen SS.  Several months later, the criteria for eligibility under the Act changed, so that membership in the Waffen SS was no longer a bar to displaced person status.  In an interview with the Commission, Breyer disclosed that he was a member of the Waffen SS, but did not disclose his membership in the SS Totenkopf.  On March 28, 1952, the Commission certified Breyer as a displaced person eligible for a visa.

Breyer then applied to immigrate to the United States as an alien under the Act.  He was granted an immigrant visa and entered the United States in May, 1952.  Thereafter, Breyer filed a petition for naturalization and on November 7, 1957, the United States District Court for the Eastern District of Pennsylvania granted his petition and issued a certificate of naturalization.

On April 21, 1992, the government filed a five-count complaint under section 1451(a) of the Immigration and Nationality Act to revoke and set aside Breyer's naturalized United States citizenship on the grounds that it was illegally procured (Counts I, II, III, IV) or was procured by concealment

or willful misrepresentation (Count V).[1]  In an amendment to his answer, Breyer set forth as an "affirmative defense" the allegation that he was a derivative citizen of the United States. Breyer asserted that his citizenship was derived from his mother, who he alleged was born in Philadelphia, Pennsylvania.[2]

---

[1].     Section 1451(a) states in pertinent part:

§ 1451. Revocation of naturalization

(a)  Concealment of material evidence; refusal to testify

It shall be the duty of the United States attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any district court of the United States . . . for the purpose of revoking and setting aside the order admitting such person to citizenship and canceling the certificate of naturalization on the ground that such order and certificate of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation . . . .

[2].     United States citizenship is acquired under the United States Constitution or by federal statute.  Persons born in the United States are automatically citizens under the Fourteenth Amendment.  Alternatively, a person may have a statutory right to United States derivative citizenship through certain familial relationships.  The applicable statute has been revised over the years.  When Breyer was born, section 1993 of the Revised Statute of 1874 granted United States citizenship to foreign-born offspring of United States citizen fathers, but not of United States citizen mothers.  Section 1993 was amended in 1934 to make it gender neutral, and thereafter, it was repealed and replaced. Presently, derivative citizenship is granted to all foreign-born children of either American citizen parent.  8 U.S.C. § 1401.

In October, 1994, Congress enacted legislation which amends 8 U.S.C. § 1401 to eliminate retroactively the gender distinction in section 1993.  Under the amendment, persons born abroad before noon May 24, 1934 to a United States citizen mother obtain citizenship.  Pub. L. No. 103-416, 108 Stat. 4305 (1994). The amendment also provides that the retroactive application of the amendment shall not confer citizenship upon any person who was ineligible for admission into the United States under the

On October 30, 1992, pursuant to section 1452(a), Breyer filed an Application for Certificate of Citizenship with the Immigration and Naturalization Service, claiming derivative citizenship through his mother,[3] which is pending at the time of this appeal.

In December, 1992, the government filed a motion for summary judgment on Count I (Illegal Procurement of U.S. Citizenship: Unlawful Admission under the Displaced Persons Act, Assistance in Persecution) and Count II (Illegal Procurement of U.S. Citizenship: Unlawful Admission under the Displaced Persons Act, Membership In Hostile Movement). Attacking the lawfulness of Breyer's 1952 entry, the government contended that Breyer was excluded under the Displaced Persons Act from obtaining a visa because of his SS Totenkopf guard service at Buchenwald and Auschwitz. Since he was ineligible under the Act, the visa with which he entered this country was invalid. Without a valid visa, his entry was unlawful, and his naturalization, in turn, was illegally procured.

Breyer's primary response to the government's motion was his claim of derivative citizenship. According to Breyer,

(..continued)
Displaced Persons Act or affect the validity of a denaturalization action against any such person. Id. Since this legislation is not before us, we make no comment upon it.

[3]. The Service is authorized to issue evidence of derivative citizenship in the form of a Certificate of Citizenship to persons who claim statutory derivative citizenship. 8 U.S.C. § 1452(a); 8 C.F.R. § 341.1–.7 (1994). The statutory procedure that persons with derivative citizenship claims must follow is discussed on pp. 17–18, supra.

since he was a United States citizen through his mother at the time of his 1952 entry, he entered the United States lawfully, and thus, his naturalization was meaningless and not the means by which he was entitled to citizenship.

On March 30, 1993, Breyer filed a motion to stay before the district court, requesting that the government's denaturalization action be stayed pending final resolution of his derivative citizenship claim under consideration before the Service. The court denied Breyer's motion on April 20, 1993.

On July 7, 1993, the district court issued an opinion and order on the government's summary judgment motion in which it analyzed the government's request for summary judgment and Breyer's derivative citizenship defense separately. United States v. Breyer, 829 F. Supp. 773 (E.D. Pa. 1993). The district court found, as the government asserted, that Breyer's concentration camp guard service was a bar to eligibility under the Displaced Persons Act, rendering his visa invalid and his entry unlawful, and concluded that Breyer's naturalization was illegally procured.

The district court then turned to the merits of Breyer's derivative citizenship claim, specifically whether section 1993 of the Revised Statute of 1874 violated Breyer's Fifth Amendment equal protection rights since at the time of Breyer's birth, the statute awarded citizenship to foreign-born offspring of United States citizen fathers but not of United States citizen mothers. The district court found section 1993 unconstitutional as applied to Breyer, but deferred a ruling on

the appropriate remedy pending the outcome of a bench trial on the disputed issue of Breyer's mother's birthplace. The district court's July 7, 1993 order granted the government's motion for summary judgment on Counts I and II, without prejudice to Breyer's right to pursue the issue of derivative United States citizenship as an affirmative defense. The government subsequently withdrew the other counts of the complaint.

After a bench trial to determine Breyer's mother's birthplace, the district court rendered a second opinion and order on December 21, 1993. United States v. Breyer, 841 F. Supp. 679 (E.D. Pa. 1993). The district court found that Breyer's mother was indeed born in the United States, and concluded that the remedy for the unconstitutionality of section 1993 is to include United States mothers under the statute retroactively. Nonetheless, because the district court also concluded that a party must exhaust administrative remedies before a federal court could issue a declaration of citizenship, it "abstained" from resolving the issue of Breyer's derivative citizenship to enable him to pursue to conclusion the administrative proceeding he had initiated before the Service. Accordingly, in its December 21, 1993 order, because the government had prevailed on summary judgment, the district court declared that Breyer procured his certificate of naturalization illegally,[4] set aside the order admitting Breyer to United States

_____

[4]. Even though the government withdrew Counts III, IV and V of the complaint, the district court also found that Breyer procured his certificate of naturalization by "willful concealment and misrepresentation of material facts". In a post-

citizenship, canceled his certificate of naturalization and demanded its surrender, and declared that Breyer's right to pursue his derivative citizenship claim through the appropriate channels was not prejudiced.[5]

On December 29, 1993, Breyer filed a motion for relief from judgment and a motion to alter or amend judgment, which requested essentially that the district court vacate its prior orders.[6]  Breyer's post-trial motions were denied on January 20,

(..continued)
trial motion, Breyer requested that these words be stricken from the court's December 21, 1993 order.  In a January 24, 1994 order, the district court granted Breyer's request, striking the words from its prior order as "superfluous".  On appeal, Breyer contends that the district court should have stricken the language as "incorrect".  We interpret the district court's use of the word "superfluous" in this context to mean unnecessary and invalid, and to provide Breyer essentially with the relief he sought.  Thus, we find that the district court did not err in the language it used to modify its December 21, 1993 order.

[5].      Although the court used the term "abstain", its December 21, 1993 order was conclusive and the case was closed on December 23, 1993.  Therefore, the district court's December 21, 1993 order was final for purposes of appeal under 28 U.S.C. § 1291.

[6].      As Breyer's December 29, 1993 motions asked the district court to vacate its prior orders, both will be viewed as Rule 59(e) motions to alter or amend the judgment, even though one was styled a Rule 60(b) motion for relief from judgment. Fed. R. Civ. P. 59, 60; Sonnenblick-Goldman Corp. v. Nowalk, 420 F.2d 858, 859 (3d Cir. 1970).  A timely appeal from a denial of a Rule 59 motion "`brings up the underlying judgment for review.'" Federal Kemper Ins. Co. v. Rauscher, 807 F.2d 345, 348 (3d Cir. 1986), quoting Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir. 1982).  Therefore, our standard of review for a denial of a Rule 59 motion varies with the underlying judicial decision.  Federal Kemper, 807 F.2d at 348. Here, it is the underlying summary judgment in favor of the government, upon which the revocation of Breyer's naturalized citizenship was premised, that we review.  Moreover, the issues Breyer raises on appeal relate to those determined by the district court's grant of summary judgment.

1994 and January 24, 1994 respectively.[7]  Breyer's timely appeal
followed.

                              II.

          In our review of this case, we remain mindful of two
competing concerns.  On the one hand, we acknowledge that "the
right to acquire United States citizenship is a precious one, and
that once citizenship has been acquired, its loss can have severe
and unsettling consequences."  Fedorenko v. United States, 449
U.S. 490, 505 (1981).  For this reason, the government "`carries
a heavy burden of proof in a proceeding to divest a naturalized
citizen of his citizenship'", Id., quoting Costello v. United
States, 365 U.S. 265, 269 (1961), and the evidence for revocation
must be "`clear, unequivocal, and convincing'" and not leave
"`the issue in doubt.'"  Id., quoting Schneiderman v. United
States, 320 U.S. 118, 125 (1943) and Maxwell Land-Grant Case, 121
U.S. 325, 381 (1887).  On the other hand, we recognize that there
must be "strict compliance" with all the congressionally imposed
prerequisites to naturalization, and failure to comply with any
of these terms renders the naturalization illegally procured and
subject to revocation under section 1451(a) of the Immigration
and Nationality Act.  Fedorenko, 449 U.S. at 506.  Even though
Breyer does not specifically challenge the district court's
conclusion that he was ineligible for a visa and entry into this

_____

[7].        Breyer's post-trial motions were denied, except that
the district court struck certain language from its December 21,
1993 order.  See n. 4, supra.

country under the Displaced Persons Act, the importance of the fundamental right that is at stake in a denaturalization proceeding requires our in-depth examination of the record to make certain that the government met its stringent burden.

A.

The Immigration and Nationality Act provides, inter alia, that no person shall be naturalized unless the applicant has resided continuously within the United States, after having been lawfully admitted for permanent residence, for at least five years. 8 U.S.C. § 1427(a)(1). Lawful admission requires entry pursuant to a valid immigrant visa. Fedorenko, 449 U.S. at 515; United States v. Kowalchuk, 773 F.2d 488, 492-93 (3d Cir. 1985), cert. denied, 475 U.S. 1012 (1986).

The Displaced Persons Act was specially enacted in 1948 to accommodate the large number of refugees wishing to emigrate to the United States following World War II. Under the Act, those eligible as displaced persons were granted entrance visas. In section 13 of the Act, however, there were notable exclusions from eligibility for a visa, two of which the government alleged and the district court found were applicable to Breyer. Section 13 states in pertinent part:

> No visas shall be issued under the provisions of this Act, as amended . . . to any person who is or has been a member of or participant in any movement which is or has been hostile to the United States or the form of government of the United States, or to any person who advocated or assisted in the persecution of any person because of race, religion or national origin.

64 Stat. 219, 227.

Since Breyer entered the country with a visa obtained under the Displaced Persons Act, the legality of Breyer's naturalization ultimately turns on his eligibility under that Act. Therefore, we begin with the district court's application of the Act's exclusionary provisions to Breyer.

In Fedorenko v. United States, the Supreme Court addressed the meaning of the Act's "assistance in persecution" exclusion in a denaturalization case of an Nazi concentration camp guard.[8] The Court clarified that this exclusion does not require willing and personal participation in atrocities, and drew a continuum of conduct to guide the courts in deciding what behavior it covers. Fedorenko, 449 U.S. at 512. According to the Court, while at one extreme is the individual who cut a female prisoner's hair before execution and should not be viewed as having assisted in persecution, at the other extreme is the

---

[8]. Fedorenko was decided under section 10 of the Act which requires a misrepresentation of a material fact before ineligibility may attach. By contrast, under section 13, a person may be ineligible simply because he falls within an excludable category of persons.

Under the Act in effect when Fedorenko applied for a visa, section 2 incorporated by reference an "assistance in persecution" exclusion found in the International Refugee Organization Constitution. This exclusion denied eligibility to those who "assisted the enemy in persecuting civil[ians]" or had "voluntarily assisted the enemy forces . . . in their operations. . . ." Fedorenko, 449 U.S. at 495, n.4. In 1950, Congress amended section 13 to create an explicit bar within the Act itself against those who assisted in persecution. 64 Stat. 219, 227 (June 16, 1950).

armed, uniformed, paid guard who having shot a fleeing prisoner would fit within the exclusion. Id. at n.34. In light of this standard, the Court held that Fedorenko's service as a guard on the perimeters of the Nazi concentration camp at Treblinka in Poland -- whether voluntary or involuntary -- constituted "assistance in persecution" under the Displaced Persons Act. Id. at 512.

In the wake of Fedorenko, other courts have determined that concentration camp guard service in circumstances similar to those presented here qualifies as assistance in persecution within the meaning of the Act. United States v. Schmidt, 923 F.2d 1253, 1259 (7th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 331 (1991) (member of Death's Head Battalion who served as an armed, uniformed guard at Sachsenhausen concentration camp patrolling outside camp gates and escorting prisoners to and from work sites with orders to shoot assisted in persecution under the Act); United States v. Kairys, 782 F.2d 1374, 1377 n.3 (7th Cir.), cert. denied, 476 U.S. 1153 (1986) (prisoner of war who was recruited to serve as a camp guard at Treblinka assisted in persecution); United States v. Demjanjuk, 518 F. Supp. 1362, 1382 n.43 (N.D. Ohio 1981), aff'd, 680 F.2d 32 (6th Cir.), cert. denied, 459 U.S. 1036 (1982) (same).


                                  B.

Given Fedorenko's guiding principles and upon our careful examination of the record, we find that the district court correctly concluded that Breyer assisted in the persecution

of persons as contemplated by section 13 of the Displaced Persons Act. The undisputed facts of record establish that Nazi concentration camps were places where suffering and harm was inflicted upon tens of thousands of innocent persons and that Breyer furthered Nazi military, political and social aims. The record is uncontroverted that he was a trained, paid, uniformed armed Nazi guard who patrolled the perimeters of two such camps with orders to shoot those who tried to escape. The prisoners he guarded and prevented from fleeing were oppressed, brutalized and killed for no other reason than their race, national origin or religion. It is therefore beyond dispute that Breyer assisted in persecution within the meaning of section 13 and, therefore, was excluded from the Act's intended scope.

We next consider whether Breyer's service as a member of the SS Totenkopf constitutes membership or involvement in a movement hostile to the United States under section 13 of the Act, and are firmly persuaded that it does. Indeed, the Displaced Persons Commission considered the SS Totenkopf to be such a movement. See Interoffice Memorandum U.S. Displaced Persons Commission Headquarters Frankfurt Instruction Memo No. 242, dated November 12, 1951. Significantly, at Auschwitz, the SS Totenkopf committed atrocities against the Polish people who were United States allies. Accordingly, we agree with the district court that Breyer's affiliation with the SS Totenkopf also excluded him from the benefits of the Act. See United States v. Koziy, 728 F.2d 1314, 1319 (11th Cir.), cert. denied, 469 U.S. 835 (1984) (individual's membership in the Organization

of Ukrainian Nationalists during World War II constituted membership in an organization hostile to the United States under section 13 of the Displaced Persons Act inasmuch as the Commission listed it as such and its members terrorized United States allies).

As in Fedorenko, where the Court sustained the revocation of the defendant's naturalization once it found that he was ineligible under the Displaced Persons Act, 419 U.S. at 418-19, a determination that section 13 of the Act precluded Breyer from obtaining a visa leads inexorably to the conclusion that Breyer's naturalization was properly revoked. See also Schmidt, 923 F.2d at 1253; Kairys, 782 F.2d at 1374, Demjanjuk, 680 F.2d at 32. When Breyer filed his petition for naturalization, the Immigration and Nationality Act required lawful admission to the United States, which in turn required a valid visa. To gain admittance, Breyer used a visa obtained under the Displaced Persons Act. Because of Breyer's wartime activities, however, the Displaced Persons Act excluded him from coverage. As the visa Breyer presented upon entry was invalid, his admission into this country was unlawful. Therefore, his naturalization was illegally procured under section 1451 as a matter of law, and the district court did not err in granting summary judgment and in ordering the cancellation of Breyer's certificate of naturalization and its surrender.

III.

In contesting the district court's decision to grant summary judgment to the government and thereby denaturalize him, Breyer did not raise any fact dispute, or for that matter, take issue with the district court's conclusions of law. Instead, he advanced his entitlement to derivative citizenship as a complete defense to the government's case. Breyer contended that the district court erred in not declaring him a United States citizen through his mother, and asserted that had his citizenship been declared, the government's case would have necessarily failed for failure to establish that he entered the United States unlawfully. Breyer also asserted that his derivative citizenship rendered the legality of his naturalization moot.

Acceptance of Breyer's mootness argument, however, would relieve him of accountability for the illegality in an essential element of the process that he chose to pursue for naturalization. That Breyer may be a citizen of this country through some other means does not alter his ineligibility under the Displaced Persons Act or validate his visa and 1952 entry and should not nullify the government's right under section 1451(a) to require the surrender of a certificate of naturalization to which Breyer is not entitled or negate the practical significance of our determining whether he may continue to assert the status of "naturalized United States citizen", a privilege he has enjoyed for over thirty-five years.

More importantly, Congress has set forth the method by which one asserting derivative citizenship may have it declared. The Immigration and Nationality Act requires that a person with

such a claim initially apply to the Immigration and

Naturalization Service for a Certificate of Citizenship.  8

U.S.C. § 1452(a); 8 C.F.R. § 341.1-.7 (1994).[9]  If the applicant

is denied a certificate, he or she may then initiate a

declaratory judgment action in federal court under section

1503(a)[10] requesting a judicial declaration of citizenship.  As

---

[9]. Section 1452 provides in pertinent part:

§ 1452.  Certificates of citizenship or U.S. non-citizen national status; procedure

(a) A person who claims to have derived United States citizenship through the naturalization of a parent or through the naturalization or citizenship of a husband, or who is a citizen of the United States by virtue of the provisions of section 1993 of the United States Revised Statutes . . . may apply to the [Service] for a certificate of citizenship.  Upon proof to the satisfaction of the [Service] that the applicant is a citizen, and that the applicant's alleged citizenship was derived as claimed, or acquired, as the case may be, and upon taking and subscribing before a member of the Service within the United States to the oath of allegiance required by this chapter of an applicant for naturalization, such individual shall be furnished by the [Service] with a certificate of citizenship . . . .

[10]. Section 1503(a) states in pertinent part:

§ 1503.  Denial of rights and privileges as national

(a) If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency of a judgment declaring him to be a national

section 1503(a) expressly requires a "final administrative denial" before any such action may be instituted, a federal district court does not have jurisdiction to declare citizenship absent exhaustion of an applicant's administrative remedies. Whitehead v. Haig, 794 F.2d 115, 119 (3d Cir. 1986).

Breyer relies upon United States v. Schiffer, 798 F. Supp. 1128 (E.D. Pa. 1992), aff'd without opinion, 31 F.3d 1175, (3d Cir. 1994), to support his assertion that his derivative citizenship claim was properly before the district court as a complete defense to the government's case.[11]  We find, however, that Schiffer is inapposite.  There the government filed a section 1451(a) complaint against Nickolas Schiffer in which it admitted that Schiffer was born in Philadelphia, Pennsylvania. This admission established that Schiffer was a United States citizen under the Fourteenth Amendment of the United Sates Constitution.  Schiffer filed a motion to dismiss the government's complaint, asserting that whether he had lost his

(..continued)
of the United States . . . . An action under this subsection may be instituted only within five years after the final administrative denial of such right or privilege and shall be filed in the district court of the United States. . . .  (emphasis added).

[11].  In Schiffer, we affirmed the district court by judgment order.  Thus, this case does not have precedential value, except for the parties involved.  Airco Indus. Gases, Inc. v. Teamsters Health and Welfare Pension Fund, 850 F.2d 1028, 1030 & n.1 (3d Cir. 1988); Internal Operating Procedures of the United States Court of Appeals for the Third Circuit, Chapter 6.A.1.a (a judgment order is entered "[w]hen the panel unanimously determines . . . that a written opinion would have no precedential or institutional value. . . .").

original United States birth citizenship pursuant to a Certificate of Loss of Nationality that had previously been issued ex parte by the Department of State was an issue in the case. In these circumstances, where Schiffer's constitutional right to United States citizenship had been admitted by the government and the complaint sought to revoke a status safeguarded by the Fourteenth Amendment and outside the reach of Congress, the district court determined that the issue of Schiffer's birth citizenship which had already been subject to attack, should be heard. Schiffer, 798 F. Supp. at 1133. Because Breyer, with allegations of statutory derivative citizenship in a straightforward denaturalization action, presents a far different case, Schiffer does not apply.

Alternatively, Breyer argues that had his derivative citizenship been declared, the government's prima facie section 1451(a) case would have failed because the government could not sustain its burden of proving that he entered the United States in alien status. Section 1451(a), however, does not require such proof. Even if it did, in his answer to the government's complaint, Breyer admitted that he applied for immigration and alien registration and entered the United States as a permanent resident and refugee.

We conclude that the district court exceeded its jurisdiction in considering the question of Breyer's derivative citizenship. The district court had before it a narrow section 1451(a) case in which it was called upon only to decide whether each step that Breyer took toward naturalization was proper.

Breyer's derivative citizenship claim was separate and distinct from, and had no bearing on, the government's denaturalization case. Significantly, in permitting Breyer to proceed with his derivative citizenship claim, the district court reached a constitutional issue that was unnecessary to its holding. In doing so, the district court disregarded a fundamental and longstanding principle of judicial restraint which requires that courts "avoid reaching constitutional issues in advance of the necessity of deciding them." Lyng v. Northwest Indian Cemetery Protective Ass'n., 485 U.S. 439, 445-46 (1988). Accordingly, Breyer's derivative citizenship claim should not have been considered, and those orders of the district court which relate to this issue will be vacated.

IV.

Lastly, Breyer raises as error the district court's denial of his motion to stay the government's denaturalization action until final resolution of his pending administrative derivative citizenship proceeding. The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication. Gold, 723 F.2d at 1077. Absent an abuse of discretion, a district court's decision in this regard will not be overturned. A stay is an extraordinary measure and Breyer failed to offer any compelling reasons for its issuance. Therefore, we will uphold the district court's decision denying Breyer a stay as within the sound exercise of its discretion.

V.

For the foregoing reasons, we will affirm the district court's grant of summary judgment on Counts I and II of the complaint in the government's favor, and its orders revoking and setting aside the order admitting Breyer to citizenship and canceling and demanding the surrender of Breyer's certificate of naturalization. We will vacate those portions of the district court's orders relating to Breyer's derivative citizenship claim.