**Johann BREYER**

v.

**Doris MEISSNER, U.S. Immigration and Naturalization Service.**

No. CIV. A. 97–6515.

United States District Court, E.D. Pennsylvania.

Aug. 28, 1998.

Willan F. Joseph, Philadelphia, PA, for Johann Breyer.

David F. Legge, U.S. Dept. of Justice— Civil Div., Torts Branch, Washington, DC, Gretchen M. Wolfinger, U.S. Dept. of Justice, Civil Div., Washington, DC, for Doris Meissner, U.S. I.N.S.

## MEMORANDUM AND ORDER

YOHN, District Judge.

Plaintiff Johann Breyer was denaturalized by order of this court in 1993, as a consequence of his service during World War II in the SS *Totenkopf* (Death's Head) Battalion as an armed guard at the Buchenwald and Auschwitz concentration camps. This court yesterday granted defendant's motion to dismiss plaintiff's petition for a declaratory judgment that he is entitled to derivative United States citizenship. For the reasons set forth below, I will deny plaintiff's motion to amend his petition.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), "leave [to amend] shall be freely given when justice so requires." *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1434 (3d Cir.1997) (citation omitted) (alteration in original). However, denial of an opportunity to amend is commended to the discretion of the district court, and such discretion is not abused if it is justified by grounds such as undue delay, bad faith, dilatory motive, prejudice, or futility. *Smith v. National Collegiate Athletic Ass'n*, 139 F.3d 180, 190 (3d Cir.1998) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). A finding of "dilatory motive" is justified where the plaintiff acts "in an effort to prolong litigation." See *Burlington*, 114 F.3d at 1434. "Futility" means that the complaint, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted, based upon the same standard of legal sufficiency as under Rule 12(b)(6).[1]

---

1. When considering a defendant's motion under Rule 12(b)(6) to dismiss a complaint for failure to state a claim upon which relief can be granted, the court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855,

*Smith,* 139 F.3d at 190 (citing *Burlington,* 114 F.3d at 1434).

## DISCUSSION

▇ This opinion assumes familiarity with this court's order granting defendant's motion to dismiss, including the factual background and statutory background of this case, as well as the conclusions of law expressed in that memorandum. I will deny plaintiff's motion to amend because the proposed amendments would be futile,[2] and due to plaintiff's dilatory motive.

### A. Dilatory Motive

The additional allegations in the proposed Second Amended Petition do not appear to reflect new information learned through discovery, and plaintiff does not allege to the contrary. (See Pl.'s Mot. Amend. at 3.) The proposed amendments "could have and should have been presented in the earlier amended complaint," and plaintiff offers no reason why they were not. See *Scattergood v. Perelman,* 945 F.2d 618, 627 (3d Cir.1991). In parceling out his claims among the original petition filed October 21, 1997, the Amended Petition filed December 15, 1997, and the proposed Second Amended Petition filed April 14, 1998 with the motion to amend, I conclude that plaintiff has acted with dilatory motive, seeking to delay any action that may be taken by the Immigration and Naturalization Service ("INS") based upon the resolution of this suit. See *INS v. Rios-*

*Pineda,* 471 U.S. 444, 450, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985) (discussing alien's incentive to delay deportation through meritless appeals).[3]

### B. Civil Rights Claims

Plaintiff seeks to assert proposed claims under 42 U.S.C. §§ 1983 and 1985(3) against defendant Meissner and proposed additional defendants Janet Reno, U.S. Department of Justice, and various John Doe officials of the Department of Justice. Plaintiff alleges that these defendants conspired to intentionally delay the processing of his application for a certificate of citizenship while the Department of Justice ("DOJ") lobbied Congress for the passage of the Immigration and Nationality Technical Corrections Act of 1994 ("INTCA"), Pub.L. No. 103–416, 108 Stat. 4305 (1994). Even accepting this factual allegation as true for purposes of the motion to amend, the proposed amendments would nevertheless be futile.

▇ Plaintiff's claims under 42 U.S.C. § 1985(3) are without foundation in the facts as alleged. Actions under § 1985(3) for a civil rights conspiracy are "limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus.'" *Lake v. Arnold,* 112 F.3d 682, 685 (3d Cir.1997) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)). Protection has

859 (3d Cir.1994) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). The plaintiff is entitled to the benefit of "every favorable inference that can be drawn from those allegations." *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). The district court, however, is "not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Along with the allegations contained in the complaint, the court may consider exhibits attached to the complaint, matters of public record, and any relevant matter that can be judicially noticed. *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993); *Wishnefsky v. Addy,* 969 F.Supp. 953, 954 (E.D.Pa.1997). A motion under Rule 12(b)(6) should be granted "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the

complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir.1998) (citing *ALA,* 29 F.3d at 859).

**2.** I note that plaintiff's motion to amend was filed with rather perfunctory support in a 5–page brief, of which only 1½ pages discussed plaintiff's new claims and allegations. Defendant filed a 40–page response on May 29, 1998, raising significant legal issues bearing on the futility of the proposed amendment. Plaintiff never filed a reply brief to address those issues.

**3.** Notwithstanding the "keen interest" of the United States in plaintiff's deportation (Def.'s Opp. Mot. Amend. at 2), I make no findings of undue prejudice to the defendant or proposed defendants, or actual undue delay. See *Lundy v. Adamar of New Jersey, Inc.,* 34 F.3d 1173, 1197 & n. 19 (3d Cir.1994) (Becker, J., concurring and dissenting in part) ("unexcused delay unaccompanied by real detriment to the defendant or to the judiciary does not constitute undue delay").

been extended under § 1985(3) to women and to the "mentally retarded, as a class." *Id.* 112 F.3d at 686. Plaintiff has alleged neither that he is a member of any class recognized as subject to the protection of § 1985(3), nor that he has been subjected to discriminatory animus based on membership in such a class.

▬ Plaintiff's claims under 42 U.S.C. § 1983 also cannot withstand a motion to dismiss, because plaintiff has not alleged that any of the proposed defendants acted under color of state law. See *Hindes v. Federal Deposit Insurance Corp.*, 137 F.3d 148, 158 (3d Cir.1998) (federal agencies and officers are facially exempt from § 1983 liability) (citations omitted). Plaintiff's proposed amendment names only federal officials and federal agencies as defendants, and makes no allegation that they acted under color of any law other than federal immigration law. Therefore, plaintiff fails to state a claim under § 1983 against the federal agencies, which are not deemed to be "persons" under § 1983, or against the individual officers in either their official or individual capacities. See *id.*

▬ Even if the proposed Second Amended Petition were liberally construed as instead asserting a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which provides a remedy against federal officials for violations of federal rights, the amendment would nevertheless be futile. To the extent that the proposed claims seek monetary damages against the United States or individual defendants in their official capacities, the claims are barred by the doctrine of sovereign immunity. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Plaintiff does not allege that the United States has waived its immunity in this case. Furthermore, the Supreme Court has held that a *Bivens* action may not be brought against a

federal agency. *Id.* 510 U.S. at 484–86, 114 S.Ct. at 1005–06.

▬ As to claims against officials in their individual capacities, plaintiff has failed to allege any personal involvement by the individual defendants in the allegedly unconstitutional conduct.[4] In addition to the significant merits of the individual defendants' asserted defenses, which include absolute and qualified immunity and the applicability of Pennsylvania's two-year statute of limitations, I note that on May 29, 1998, defendant Meissner and Attorney General Reno filed a response opposing plaintiff's motion to amend. This response also encompassed in the alternative a motion to dismiss all claims against Meissner and Reno in their individual capacities, if plaintiff's motion to amend were granted. Local Rule 7.1 provides that the party opposing a motion "shall serve a brief in opposition, together with such answer or other response which may be appropriate, within fourteen (14) days after service of the motion and supporting brief. In the absence of a timely response, the motion may be granted as uncontested ..." U.S.Dist.Ct. Rules E.D. Pa., Civil Rule 7.1(c) (1995). Plaintiff never filed a brief or any other response to the May 29, 1998 motion to dismiss. Therefore, even if I granted plaintiff's motion to amend, I would dismiss as uncontested all claims against Meissner and Reno in their individual capacities.

I conclude that plaintiff has not stated a claim under *Bivens* upon which relief may be granted against any defendant or proposed defendant in his or her individual capacity, or against INS or the Department of Justice. I further conclude that monetary damages are not available under *Bivens* against any remaining proposed defendants in their official capacities. Therefore, the only remaining potential claims under *Bivens* are for equitable relief against individual defendants in their official capacities.

---

4. Plaintiff's pleadings are not specific as to the conduct of individual defendants. They are also clearly insufficient to overcome defendant's assertion of qualified immunity, under which federal officials performing discretionary functions are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Johnson v. Fankell*, 520 U.S. 911, 117 S.Ct. 1800, 1803, 138 L.Ed.2d 108 (1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

## C. Improper Lobbying Activity by DOJ

 Plaintiff alleges that the Department of Justice and its Office of Special Investigations ("OSI") improperly lobbied Congress for the provision that became § 101(c)(2) of INTCA, with the intent to specifically target plaintiff. Plaintiff does not allege that DOJ's comments to Congress caused the alleged delay at the INS, but rather that DOJ's comments to Congress injured plaintiff by causing INTCA to be enacted in its current form.

When the executive branch informs Congress of a perceived need for a change in existing law or a proposed law, it serves an important and well-established purpose in the legislative process. "With countless advocates outside of the government seeking to influence its policy, it would be ironic if those charged with making governmental decisions were not free to speak for themselves in the process." *Keller v. State Bar of California,* 496 U.S. 1, 12, 110 S.Ct. 2228, 2235, 110 L.Ed.2d 1 (1990). Indeed, it is entirely commonplace for the Department of Justice to draft or comment upon proposed legislation before Congress. See, *e.g., United States v. Donovan,* 429 U.S. 413, 441, 97 S.Ct. 658, 674–75, 50 L.Ed.2d 652 (1977); *Natural Resources Defense Council v. U.S.E.P.A.,* 703 F.2d 700, 711 (3d Cir.1983); *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 764 n. 37 (D.C.Cir.1978). Congress is free to accept or reject such external input into the legislative process.[5]

To the extent that plaintiff's argument is based upon legislative motivations, there is no support in the law for the relief plaintiff seeks. It is a long-settled principle that, unless a statute is found to be a bill of attainder or to abridge a substantial constitutional right, the courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien,* 391 U.S. 367, 383–85, 88 S.Ct. 1673, 1682–83, 20 L.Ed.2d 672 (1968); *Daniel v. Family Security Life Ins.*

*Co.,* 336 U.S. 220, 224, 69 S.Ct. 550, 552, 93 L.Ed. 632 (1949); *Penthouse International, Ltd. v. Meese,* 939 F.2d 1011, 1017 (D.C.Cir. 1991). Because the retroactivity limitation in INTCA is not a bill of attainder, and violates neither equal protection nor due process, plaintiff cannot state a claim for violation of a substantial constitutional right, and the inquiry into legislative motivation is foreclosed.

To the extent that plaintiff's argument is based upon improperly motivated action by DOJ, such a perceived abuse of executive power would raise only substantive due process concerns. Although the purpose of the Due Process Clause is to "prevent government officials from abusing their power, or employing it as an instrument of oppression," the Court has consistently held that substantive due process protects against "only the most egregious official conduct." *County of Sacramento v. Lewis,* 523 U.S. 833, ——, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998) (quoting *Collins v. City of Harker Heights,* 503 U.S. 115, 126, 112 S.Ct. 1061, 1069, 117 L.Ed.2d 261 (1992)) (internal quotation marks and alterations omitted). The Court recently noted that "for half a century now we have spoken of the cognizable level of executive abuse of power as that which shocks the conscience." *Id.* 523 U.S. at ——, 118 S.Ct. at 1717 (citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)).

Plaintiff has identified no authority, and this court's research has located none, for the proposition that a duly enacted law may be struck down or equitably rendered unenforceable because of ill-timed or even inaccurate recommendations to Congress by an executive branch department, agency, or employee. I find no provision of law that prevents DOJ or its employees from advancing the agenda of the executive branch by seeking a change in proposed legislation, even if they intend such a change to adversely affect people already engaged in litigation or the

---

5. Plaintiff makes no allegation that the enactment of INTCA did not conform to the constitutionally mandated legislative process, which ensures that the final product reflects the best judgment of both Houses, and in most cases the assent of the President. Cf. *Clinton v. City of New York,* —— U.S. ——, —— & n. 11, 118 S.Ct. 2091, 2097 & n. 11, 141 L.Ed.2d 393 (1998) (citation omitted). If the contested provision in § 101(c)(2) of INTCA were absent, "[t]here is no way of knowing whether these laws, in their truncated form, would have received the requisite support from both the House and the Senate." *Id.* (quotation omitted).

administrative process. Even if such conduct would be egregiously abusive if it were directed toward a citizen—and I do not so conclude—nevertheless, "[g]overnmental conduct that may be considered 'shocking' when it serves to deprive the life, liberty or property of a citizen may not be unconstitutional when directed at an alien." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir.1991). Accepting plaintiff's allegations and all reasonable inferences therefrom as true, I conclude that there is nothing whatsoever in DOJ's advocacy to Congress that shocks the conscience of the court, notwithstanding the timing or specific intent of any lobbying activity that may have taken place.

**D. Equitable Claims Related to Adjudicative Delay**

Plaintiff's remaining allegations of intentional adjudicative delay, even if proven, fail to state a claim for which relief may be granted. Plaintiff alleges that his application was made on October 30, 1992. (Second Amended Pet. ¶ 33.) INTCA was enacted into law on October 25, 1994. Any delay that may have occurred after the enactment of INTCA could not have had an effect on the disposition of plaintiff's claim. Perhaps plaintiff might be able to establish that a two year period was an unreasonable amount of time for an administrative decision to be reached and for administrative remedies to be exhausted. But see *Wright v. Califano*, 587 F.2d 345, 353 (7th Cir.1978) (noting that courts are ill-suited to determine appropriate length of time for particular administrative actions).

Plaintiff's proposed claims for equitable relief based upon this delay, whether brought under *Bivens* or the Administrative Proce-

dure Act ("APA"), cannot withstand a motion to dismiss. For that reason, equitable estoppel and other injunctive relief sought by plaintiff are not available.

*1. Protected Due Process Interest*

Where a government official or agency engages in undue delay for improper reasons, and thereby deprives plaintiff of some constitutionally protected interest, such delay may raise due process concerns.[6]

The constitutionally protected interest at issue here is not plaintiff's alleged interest in a certificate of citizenship. As noted in this court's opinion granting defendant's motion to dismiss, plaintiff had no protected interest in that benefit for due process purposes. Plaintiff does not suggest that the procedures employed by the INS or its Administrative Appeals Unit ("AAU") resulted in an erroneous administrative denial of the certificate of citizenship. Rather, plaintiff acknowledges that the INS is not authorized to adjudicate constitutional claims, that it accordingly issued a denial, and alleges that INS improperly delayed the issuance of that denial. (See Second Amended Pet. ¶¶ 37–39, 60.) Where there is no legitimate claim of entitlement to an underlying benefit, claimants still have a due process right to a hearing at which they might attempt to establish eligibility for that benefit. *Wilkinson v. Abrams*, 627 F.2d 650, 665 & n. 18 (3d Cir. 1980) (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). Therefore, plaintiff's only protected due process interest is his right to constitutionally satisfactory procedures in the administrative resolution of his claim.

---

6. Where prosecutors delay indictment in a criminal case, "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay ... caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). The *Marion* standard is inapposite here, because this action and other proceedings relating to plaintiff's citizenship status or deportation are purely civil. See, *e.g., INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82 L.Ed.2d 778 (1984). How-

ever, in assessing claims of administrative delay in the context of mandamus, the District of Columbia Circuit has suggested that due process concerns may be implicated. *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70, 80 (D.C.Cir.1984). That court noted that "[m]any of the same considerations that impel judicial protection of the right to a 'speedy trial' in criminal cases or implementation of civil decrees with all deliberate speed are not inapposite in agency deliberations," which may similarly deprive persons "of rights and economic opportunities without the due process the Constitution requires." *Id.* (quotation omitted).

At issue in a claim of administrative delay is what the Third Circuit has labeled "temporal due process." *Id.* 627 F.2d at 665. Plaintiff claims that the procedures employed by the INS in his case violated his due process rights by causing an injurious delay in adjudication. Specifically, plaintiff alleges the following procedural flaws: (1) INS intentionally took an unusually long time at every step of its decisionmaking (Second Amended Pet. ¶¶ 47, 58, 60–61, 66); (2) INS improperly considered documentation which OSI was without authority to submit (*id.* ¶¶ 52–57); (3) INS erroneously remanded plaintiff's case to the District Director, based in part on its review of the OSI's documentation (*id.* ¶¶ 51–53); (4) INS failed to provide the OSI's documentation to plaintiff's counsel for six months after the remand (*id.* ¶ 59); and (5) agents or employees of INS and DOJ conspired to delay plaintiff's adjudication, and thereby to deprive him of his constitutional rights (*id.* ¶¶ 65–68).

The irreducible core of due process is "the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, ——, 118 S.Ct. 753, 756, 139 L.Ed.2d 695 (1998) (citing *Cleveland Bd. of Ed. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985)). The Court, in determining what process is constitutionally due, has set forth three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Gilbert v. Homar,* 520 U.S. 924, 117 S.Ct. 1807, 1812, 138 L.Ed.2d 120 (1997) (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)). Due process is flexible, however, and "calls for such procedural protections as the particular situation demands." *Id.* (quoting *Morrissey*

*v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

The private interest at stake in plaintiff's administrative review was his interest in an administrative resolution without undue or improper delay, rather than his ultimate interest in the benefit of citizenship. Because a final administrative denial was a jurisdictional prerequisite for plaintiff's action in federal court, and only in federal court could plaintiff litigate the constitutionality of a statute, plaintiff's dispute is with the timing of the denial, and not with the denial itself. The protected interest in avoiding unreasonable delays at the second level of administrative appellate review, such as plaintiff's final administrative denial by the AAU upon motion for reconsideration, "is of lesser significance than the initial determination of eligibility following an evidentiary hearing." *Wilkinson,* 627 F.2d at 666 (upholding constitutionality of delay in second level appeals from unemployment benefit claims). The Third Circuit has found that the "private interest in the prompt disposition of second level appeals is *significantly weaker* than the interest in a prompt initial hearing." *Id.* 627 F.2d at 669 (emphasis added).

The risk that the procedures employed by the INS might deprive plaintiff of his interest in a speedy administrative resolution was more than negligible, under the circumstances alleged by plaintiff. However, I conclude that the probable value to plaintiff of any additional or substitute procedural safeguards to prevent such delay would have been negligible. The enactment of INTCA occurred in October 1994, prior to the Third Circuit's disposition of the government's denaturalization case against plaintiff.[7] INTCA played no part in the Third Circuit's decision. *United States v. Breyer,* 41 F.3d 884, 887 n. 2 (3d Cir.1994). It is a highly speculative contention, at best, that a speedier exhaustion of plaintiff's administrative remedies would have resulted in a judicial

---

7. In this court's order of December 21, 1993, I suggested in dicta that if plaintiff's administrative remedies were exhausted, and if plaintiff established that his mother remained a United States citizen at the time of plaintiff's birth, and that he remained a United States citizen at the time he entered this country, I might then grant plaintiff's desired remedy for the unconstitutionality of R.S. § 1993. *United States v. Breyer,* 841 F.Supp. 679, 685–86 (E.D.Pa.1993), *aff'd in part and vacated in part,* 41 F.3d 884 (3d Cir.1994). The Third Circuit ruled on plaintiff's appeal in November 1994, and vacated the portions of this court's 1993 *Breyer* opinions that are relevant to this discussion. *United States v. Breyer,* 41 F.3d 884, 892–93 (3d Cir.1994).

decision on the merits prior to the passage of INTCA. It is still more speculative that plaintiff would have been granted the relief he sought, in this court or at any level of appellate review.

The government's interest in the procedures that it allegedly employed is not limited to its alleged improper desire to delay plaintiff's final administrative denial. Rather, the government may assert its legitimate interests in presenting all available pertinent evidence to an adjudicative body, in giving all due consideration to such evidence, and in generally affording full consideration at every stage of the deliberative process. To whatever extent plaintiff desired to challenge on any grounds the materials submitted by the OSI, plaintiff's allegations indicate that he had approximately two months to do so, because his counsel received those materials in March 1994, and the District Director's decision on remand took place in May 1994. (Second Amended Pet. ¶¶ 58–59.) It was the AAU's decision to remand that afforded plaintiff the opportunity to address the documents that were allegedly improperly submitted by OSI, and to be heard on that issue by the District Director, the primary decisionmaker in the administrative process.

Accepting plaintiff's allegations and all reasonable inferences therefrom as true, I conclude that none of the issues identified by plaintiff had a substantial adverse impact upon plaintiff's core due process rights to notice and to a meaningful hearing, and that whatever their flaws, those procedures afforded plaintiff all the process to which he was due.

### 2. Remedy for Undue Delay

Even if the undue delay did in some way violate plaintiff's due process rights, I conclude that plaintiff is not entitled to the relief he seeks. While administrative agencies "are often guilty of unconscionable delay," the tools available to courts for remedying such delay are weak and limited, even "against egregious, prejudicial, unjustifiable administrative foot-dragging." *Maxon Marine, Inc. v. Director, Office of Workers'*

*Compensation Programs,* 39 F.3d 144, 147 (7th Cir.1994).

During the alleged delay following his October 30, 1992 application, plaintiff had the opportunity to pursue timely judicial relief for an unlawful or unreasonable delay by the INS. Plaintiff does not allege that he did so at any time prior to the final administrative denial of his application on December 30, 1996. An action could have been brought under the Mandamus and Venue Act, 28 U.S.C. § 1361, or under the APA, which allows a court to compel "agency action unlawfully withheld or unreasonably delayed." *Independence Mining Co. v. Babbitt,* 105 F.3d 502, 506 (9th Cir.1997) (quoting 5 U.S.C. § 706(1)).[8]

Assuming arguendo that plaintiff's due process rights were violated by the agency delay, the APA specifies the statutory remedy for an agency action found to be "contrary to [a] constitutional right." 5 U.S.C. § 706(2)(B). The reviewing court shall "hold unlawful and set aside" such action. *Id.* § 706(2). Even if plaintiff's proposed claim under § 706(2) were meritorious, I point out that this remedy could only result in the reconsideration of plaintiff's claim to derivative citizenship, whether by the INS or by this court, under the same provisions of INTCA that I have upheld as constitutional and applicable to plaintiff. Accordingly, I conclude that plaintiff's injury is not redressable under the APA, which can provide none of the relief sought by plaintiff.

### CONCLUSION

Plaintiff's motion to amend will be denied because of plaintiff's dilatory motive and because the petition, as amended, would fail to state a claim for which relief may be granted. An appropriate order follows.

### *ORDER*

AND NOW, this 27 day of August, 1998, upon consideration of plaintiff's motions to amend, and the responses thereto, IT IS HEREBY ORDERED that:

---

**8.** It should be noted that the administrative action "unlawfully withheld or unreasonably delayed" by the INS was not the grant of citizenship, but the *denial* of citizenship to plaintiff. If the INS had been compelled to act without delay, there is nothing to suggest that its decision would have been different.

1. Plaintiff's motions to amend (Documents 18 and 19) are DENIED.

2. Individual defendants' motion to dismiss (Document 24) is DENIED AS MOOT.

3. The clerk is directed to mark this action closed for statistical purposes.